IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

KELLY ARNDT and SHIRLEY SILKISS,
individually and o/b/o all others similarly
situated,

    Plaintiffs,

v.

TWENTY-ONE EIGHTY-FIVE, LLC,
a Delaware limited liability company,
and STATE FARM BANK, F.S.B.,
a federal savings bank,

    Defendants.
_____/

Class Action

CASE NO.:

## DEFENDANTS' NOTICE OF REMOVAL

Defendants, Twenty-One Eighty-Five, LLC ("2185"), and State Farm Bank, F.S.B. ("State Farm Bank," and collectively with 2185, "Defendants"), pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) and 28 U.S.C. § 1453, as well as 28 U.S.C. §§ 1441 and 1446, hereby removes to this Court the state court action described below.

### Background and Plaintiffs' Allegations

1. This action was filed on October 11, 2019 in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida as *Kelly Arndt and Shirley Silkiss v. Twenty-One Eighty-Five, LLC and State Farm Bank, F.S.B.*, Case No. CACE19021264 (Fla. 17th Jud'l Cir.) (the "State Court Action").

2. Plaintiffs filed the State Court Action on behalf of themselves and Florida residents (the "Putative Class") who allegedly: (a) entered into finance agreements for the purchase of new and used motor vehicles (the "Finance Agreements"), which were held and/or serviced by State Farm Bank; (b) had their personal property repossessed by State Farm Bank or its agents; (c) were

1

sent a certain post-repossession notice; and (d) have not obtained a discharge in bankruptcy applicable to any Finance Agreement. Plaintiffs also filed the State Court Action on behalf of themselves and a "subclass" (the "Putative Subclass") from whom State Farm Bank also allegedly pursued post-repossession deficiencies.

3. Plaintiffs claim that the post-repossession notices sent to the Putative Class fail to comply with Article 9 of the Uniform Commercial Code (the "UCC") in various respects. As a result, Plaintiffs also claim that State Farm's collection or attempted collection of deficiencies from the Putative Subclass failed to comply with Article 9 of the UCC as well as the Florida Consumer Collection Practices Act (the "FCCPA").

4. Based on these theories, Plaintiffs assert four claims: (a) class-wide violation of UCC Article 9, against 2185 only (Count I) (Compl. ¶¶ 58-64); (b) class-wide declaratory relief (Count II) (Compl. ¶¶ 65-68); (c) class-wide unjust enrichment (Count III) (Compl. ¶¶ 69-72); and (d) subclass-wide violation of the FCCPA (Count IV) (Compl. ¶¶ 73-81).

5. Plaintiffs seek the following relief, which requests are set forth separately from the claims on pages 16 and 17 of the Complaint: (a) "an order certifying this claim as a class action"; (b) "an order finding and declaring the acts and practices as challenged [in the Complaint] are unlawful, unfair and deceptive"; (c) "an order finding and declaring that Plaintiffs and the class members do not owe [2185] any of the deficiency balances purportedly owed following disposition of their vehicles"; (d) "an order preliminarily and permanently enjoining Defendants from engaging in the practices challenged [in the Complaint]"; (e) "an order of restitution and/or disgorgement in an amount to be determined at trial, which amount is at least equal to all sums collected by Defendants for alleged deficiency balances following the disposition of repossessed motor vehicles"; (f) statutory damages against 2185 "for each class member in the amount of either

the credit service charge plus ten percent of the principal amount of the obligation or the time-price differential plus ten percent of the case price, whichever is greater"; (g) statutory and actual damages against the Defendants for the Putative Subclass pursuant to the FCCPA; (h) "an order requiring Defendants to remove any adverse credit information which State Farm Bank previously reported to credit reporting organizations" on the deficiencies; (i) pre-judgment interest; (j) attorneys' fees, costs and expenses; and (k) "such other and further relief as the Court may deem just and proper." (Compl. pp. 16-17.)

6. Pursuant to 28 U.S.C. § 1446(a), Defendants have attached: (a) a copy of the Complaint for Damages and Incidental Relief (the "Complaint") filed in the State Court Action as **Exhibit 1**; and a copy of all other process and pleadings served on any of the Defendants in the State Court Action as **Composite Exhibit 2**. A true and correct copy of this Notice of Removal will be filed with the Clerk of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, in accordance with the provisions of 28 U.S.C. § 1446(d), along with a Notice of the filing, a copy of which will be served upon all parties.

7. 2185 was served with the Complaint on October 25, 2019, at which time State Farm Bank had not yet been formally served. Thus, this Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446.

## This Court Has Jurisdiction Over This Action Under CAFA

8. The State Court Action is removable to this Court, and this Court has jurisdiction over this action, under CAFA, 28 U.S.C. § 1332, 28 U.S.C. § 1441(a) and (b), and 28 U.S.C. § 1453, because this is a putative class action with more than 100 putative class members that are seeking to recover in excess of $5 million in the aggregate, and there is minimal diversity.

9. Plaintiffs seek to bring this action on their own behalves and on behalf of the Putative Class comprised of:

> [A]ll Florida residents who, in the four (4) years preceding the filing of the instant action to the date hereof:
>
> (a) have or had a finance agreement ("Finance Agreement") held by State Farm Bank;
>
> (b) had their motor vehicle and other personal property repossessed by State Farm Bank or its agents;
>
> (c) were sent a post-repossession notice in the form or substantially similar form as the Notice of Sale, or in the case of a co-obligor were not sent notices in the form of Exhibits "B"); and
>
> (d) who have not obtained a discharge in bankruptcy applicable to any such Finance Agreement.

(Compl. ¶ 34).

10. Plaintiffs also seek to bring this action on their own behalves and on behalf of the Putative Subclass comprised of:

> [A]ll [Putative Class] members who meet all of the requirements of the class definition contained above, and who were sent a Deficiency Collection Notice in the form of Exhibit "C" (or in the case of a co-obligor were not sent a notice) and have been subjected to collection for a deficiency.

(Compl. ¶ 35).

11. The Complaint seeks to certify a class pursuant to Fla. R. Civ. P. 1.220(b)(2) and (b)(3). (Compl. ¶ 36).

12. CAFA reflects Congress's intent to have federal courts adjudicate substantial class action suits brought against out-of-state defendants. Toward that end, CAFA expressly provides that class actions filed in state court are removable to federal court. CAFA expands federal jurisdiction over class actions by amending 28 U.S.C. § 1332 to grant original jurisdiction where the putative class contains at least 100 class members; and any member of the putative class is a

4

citizen of a State different from that of any defendant; and the amount in controversy exceeds $5 million in the aggregate for the entire class, exclusive of interest and costs. 28 U.S.C. § 1332(d).

13. This suit satisfies all the requirements under CAFA for federal jurisdiction: (1) the putative class exceeds 100; (2) the members of the Putative Class have a different citizenship from Defendants; (3) the amount in controversy exceeds $5 million; and (4) the exceptions to CAFA do not apply here. *See* 28 U.S.C. § 1332(d).

### A. The Putative Class Exceeds 100

14. CAFA requires that the class consist of at least 100 persons. 28 U.S.C. § 1332(d)(5).

15. That requirement is clearly met here.  While Plaintiffs do not identify the number of Putative Class members in their Complaint, Plaintiffs allege, "[b]ased on the best due diligence and the experience of Class Counsel," that they "believe that State Farm Bank repossessed over seventy-five (75) vehicles and other personal property in a calendar year in the State of Florida." (Compl. ¶ 43).  Thus, Plaintiffs conclude that "the prospective class numbers are at least in the hundreds . . . ." (Compl. ¶ 44).  Further, a review of Defendants' business records indicates that State Farm Bank, either on its own behalf or as servicer for 2185, repossessed approximately 1,713 motor vehicles in Florida during the approximately four-year period beginning October 11, 2015. (**Exhibit 3**, Declaration of Melissa Kahn (the "Declaration") ¶¶ 2-3).  Accordingly, it is clear that there will be in excess of 100 class members likely implicated in the Putative Class asserted by the Plaintiffs in the Complaint.

### B. There is Minimal Diversity Sufficient to Establish CAFA Jurisdiction.

16. The second CAFA requirement is at least minimal diversity—at least one putative class member must be a citizen of a different state than any one defendant. 28 U.S.C. § 1332(d)(2).

17.     On information and belief and as set forth in the Complaint, Plaintiffs are now, and were at the time of the filing of the Complaint, and at all times intervening, citizens of Florida. (Compl. ¶¶ 5-6).  As set forth in the Complaint, Plaintiffs are "*sui juris*." (*Id.*)

18.     State Farm Bank is now, and was at the time of filing the Complaint, and at all times intervening, a federal savings association with its home office in Bloomington, Illinois. (Compl. ¶ 7).  Therefore, for purposes of diversity, State Farm Bank is a citizen of Illinois. *See* 12 U.S.C. § 1464(x); *see also State Farm Bank F.S.B. v. Reardon*, 539 F.3d 336, 339 (6th Cir. 2008) ("State Farm Bank is a wholly owned subsidiary of State Farm Mutual Automobile Insurance Company ('State Farm Mutual') and is headquartered in Bloomington, Illinois."); *State Farm Bank, F.S.B. v. Sloan*, No. 11-cv-10385, 2011 WL 2144227, *1 (E.D. Mich. May 31, 2011) (finding State Farm Bank to be a citizen of Illinois for purposes of diversity because "its home office is located in Bloomington, Illinois").

19.     2185 is, and was at the time of filing the Complaint, and at all times intervening, a Delaware limited liability company with its principal place of business in Bloomington, Illinois. For purposes of determining diversity of citizenship, a limited liability company is deemed to be a citizen of each state of which any of its members is a citizen. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004).  2185 is, and was at the time of filing the Complaint, and at all times intervening, a wholly owned subsidiary of State Farm Mutual Automobile Insurance Company.  State Farm Mutual Automobile Insurance Company is, and was at the time of filing the Complaint, and at all times intervening, an Illinois corporation with its principal place of business in Illinois.  State Farm Mutual Automobile Insurance Company is therefore considered to be a citizen of Illinois.  *See* 28 U.S.C. § 1332(c)(1).  Thus, 2185 is also a citizen of Illinois for purposes of diversity.

50880058;1

20. The Putative Class is comprised of certain "Florida residents." (Compl. ¶ 34).

21. Thus, there is diversity here, as the Plaintiffs (as well as the Putative Class members) are citizens of Florida, and State Farm Bank and 2185 are citizens of Illinois. Therefore, the second CAFA requirement is met. 28 U.S.C. § 1332(d)(2).

C. **The CAFA Amount in Controversy Requirement of $5,000,000 Is Met.**

22. CAFA also requires that the aggregate amount in controversy exceed $5 million for the entire Putative Class in the aggregate, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). As the United States Supreme Court has held, Defendants' notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014).[1] Here, based upon Plaintiffs' allegations and theories (which Defendants dispute, but which control for removal purposes), Defendants plausibly allege that the $5 million CAFA amount in controversy requirement is satisfied.

23. First, Plaintiffs seek declaratory and injunctive relief in the Complaint by making the following requests: (a) for "an order finding and declaring that the acts and practices as

---

[1] Defendants must show only that it is "more likely than not" that the amount in controversy exceeds the jurisdictional requirement. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010); *see also South Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014). To meet that burden, a removing party can provide "specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations . . . . [A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka*, 608 F.3d at 754. In meeting this burden, the removing party may present "affidavits, declarations, or other documentation." *Id.* at 755 (citations omitted); *see also Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000) (the district court may "require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal") (citations omitted); *Fowler v. Safeco Ins. Co. of Am.*, 915 F.2d 616, 617 (11th Cir. 1990) ("Defendants have the opportunity to submit affidavits, depositions, or other evidence to support removal.").

challenged herein are unlawful, unfair and deceptive"; (b) for "an order finding and declaring that Plaintiffs and the class members do not owe [2185] any of the deficiency balances purportedly owed following the disposition of their vehicles"; and (c) for "an order preliminarily and permanently enjoining Defendants from engaging in the practices challenged" in the Complaint. (Compl. p. 16) (emphasis added).  "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective," or "the monetary value [that] would accrue to the class plaintiffs upon issuance of the prospective injunction [and/or declaration]." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000) (citation omitted); *see also Hartford Ins. Grp. v. Lou-Con Inc.,* 293 F.3d 908, 910 (5th Cir. 2002) (amount-in-controversy in an action for declaratory relief is "the value of the right to be protected or the extent of the injury to be prevented").  Conversely, the value of declaratory or injunctive relief is also "the losses that will follow from" not obtaining the requested relief. *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977).

24. Second, Plaintiffs seek "restitution and/or disgorgement . . . which amount is at least equal to all sums collected by Defendants for alleged deficiency balances following the disposition of repossessed motor vehicles . . . ."  (Compl. p. 16).

25. Third, Plaintiffs seek "statutory [ ] damages" for the Putative Subclass pursuant to section 559.77, Florida Statutes. (Compl. p. 16).  Section 559.77(2), Florida Statutes (part of the FCCPA), provides in relevant part:

> Any person who fails to comply with any provision of s. 559.72 is liable . . . for additional statutory damages as the court may allow, but not exceeding $1,000 . . . . In a class action lawsuit brought under this section, the court may award additional statutory damages of up to $1,000 for each named plaintiff and an aggregate award of additional statutory damages up to the lesser of $500,000 or 1 percent of the defendant's net worth for all remaining class members; however, the aggregate award may not provide an individual class member with additional statutory damages in excess of $1,000. . . .

Fla. Stat. § 559.77(2).

26.     Based on a review of the Defendants' business records, and as explained more fully in the Declaration, Defendants have demonstrated that the total amount of potential exposure far exceeds the $5 million threshold and, indeed, exceeds $13 million, as follows:

| Damage | Amount |
|---|---|
| Declaratory/Injunctive Relief | $8,850,061 |
| Restitution/Disgorgement | $3,166,386 |
| FCCPA Statutory Damages | $1,681,000 |

27.     The amount of the declaratory/injunctive relief reflected above was calculated by subtracting the amount of deficiencies recovered during the relevant time period from the total amount of deficiencies owed, to arrive at the total amount of deficiencies still due and owing from Putative Class members.  If Plaintiffs are awarded the declaratory/injunctive relief they are requesting, then they will have been successful in obtaining a declaration that the total amount of deficiencies still due and owing are, in fact, not due and owing, and an injunction prohibiting Defendants from collecting and/or attempting to collect the total amount of deficiencies still due and owing.  (Compl. p. 16).

28.     The amount of the restitution/disgorgement damages reflected above was calculated by adding the amount of deficiencies recovered during the relevant time period from Putative Class members.  If Plaintiffs are awarded the restitution/disgorgement damages they are requesting, then State Farm will be required to disgorge "all sums collected by Defendants for alleged deficiency balances following the disposition of repossessed motor vehicles . . . ." (Compl. p. 16).

29.     The amount of the FCCPA statutory damages reflected above was calculated by multiplying the number of repossessions from Putative Class members with a deficiency remaining

after sale during the relevant time period (approximately 1,179) by $1,000 (the maximum amount of statutory damages awardable under section 559.77(2), Florida Statutes), adding $2,000 (the maximum amount of additional statutory damages awardable under section 559.77(2) for each named plaintiff in a class action), and adding $500,000[2] (the maximum amount of additional statutory damages awardable under section 559.77(2) for all remaining class members in a class action).

30.     In addition to the damages otherwise addressed above, it is clear that the claims of the Putative Class (likely containing approximately 1,713 members) for damages under UCC Article 9 are themselves likely to exceed $5 million, given that the claim of Kelly Arndt, a named plaintiff, exceeds $12,000.  Section 679.625(3)(b), Florida Statutes (part of UCC Article 9), authorizes certain plaintiffs to recover "an amount not less than the credit service charge plus 10 percent of the principal amount of the obligation or the time-price differential plus 10 percent of the cash price" from a secured party that failed to comply with UCC Article 9 if the collateral is consumer goods.  Fla. Stat. § 679.625(3)(b).  The amount of Ms. Arndt's claim can be calculated based on the information in the Arndt Finance Agreement attached as Exhibit A to the Complaint, as follows:

```
  $ 8,029.53   (Credit Service Charge)
+ $ 4,030.24   (10 percent of Principal Amount)
  $12,059.77
```

31.     Plaintiffs have also requested an award of attorneys' fees, including under sections 57.105(7) and 559.77(2), Florida Statutes (part of the FCCPA).  Section 57.105(7), Florida Statutes, authorizes a court to allow reasonable attorneys' fees to the prevailing party in any action

---

[2] The maximum amount of additional statutory damages awardable under section 559.77(2) for all remaining class members in this action is $500,000, not 1 percent of Defendants' net worth, because Defendants' net worth is collectively more than $50 million. (Declaration ¶ 4).

with respect to a contract that contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract. *See* Fla. Stat. § 57.105(7). The FCCPA authorizes certain plaintiffs to recover "court costs and reasonable attorneys' fees incurred" from any person who "fails to comply with any provision" of the FCCPA. *See* Fla. Stat. § 559.77(2). Although Defendants dispute whether Plaintiffs or the Putative Class are entitled to any such awards, and dispute that the statutes apply to the Plaintiffs' or the Putative Class' claims as a matter of fact or law, for purposes of removal, Plaintiffs' assertion of a statutory right to attorneys' fees is properly considered in ascertaining the amount in controversy. *See, e.g., Sheffield Woods at Wellington Condo. Ass'n v. Scottsdale Ins. Co.*, 2009 WL 2255219, at *1 (M.D. Fla. July 28, 2009) (denying motion to remand, finding amount in controversy met based in part on potential for attorneys' fees under Fla. Stat. § 627.428). Here, the possibility of attorneys' fees simply swells the amount in controversy and further demonstrates that the CAFA amount in controversy requirement is clearly met here.

32. For all the foregoing reasons, it is evident that the $5 million CAFA amount in controversy requirement is satisfied.

**D.   The Exceptions to CAFA Do Not Apply Here**

33. CAFA provides two mandatory exceptions to the application of federal jurisdiction (both of which the Eleventh Circuit has labeled the "local controversy exception"), and one discretionary exception. 28 U.S.C. § 1332(d)(3)-(4); *see also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (discussing the "local controversy exception"); *Gavron v. Weather Shield Mfg.*, 2010 WL 3835115, at *2-3 (S.D. Fla. Sept. 29, 2010). The burden of establishing the exceptions to CAFA rests not on Defendants, but rather on Plaintiffs as the non-removing parties. *Evans*, 449 F.3d at 1164 ("[W]hen a party seeks to avail itself of an express

statutory exception to federal jurisdiction granted under CAFA, as in this case, we hold that the party seeking remand bears the burden of proof with regard to that exception."). In this case it is clear that none of these exceptions apply, and Plaintiffs could not possibly meet their burden of establishing any exception.

### E. The Action is Properly Removed

34. Accordingly, because the CAFA prerequisites are met and none of the exceptions applies, this case is properly removable under CAFA.

35. The undersigned state that this removal is well-grounded in fact, warranted by existing law, and not interposed for any improper purpose.

**WHEREFORE**, Defendants pray that this Court will consider this Notice of Removal as provided by law governing the removal of cases to this Court; that this Court will make the proper orders to achieve the removal of the State Court Action to this Court; and that this Court will make such other orders as may be appropriate to effect the preparation and filing of a true record in this cause of all proceedings that may have been had in the State Court Action.

Dated: November 22, 2019.                Respectfully submitted,

**AKERMAN LLP**

/s/ Marcy Levine Aldrich
Marcy Levine Aldrich (FBN 0968447)
marcy.aldrich@akerman.com
Three Brickell City Centre
98 Southeast Seventh Street
Miami, Florida 33131
Phone: (305) 374-5600
Fax: (305) 374-5095

and

/s/ E. Ginnette Childs
E. Ginnette Childs (FBN 0298130)
ginny.childs@akerman.com

*/s/ Sara A. Brubaker*
Sara A. Brubaker (FBN 0105769)
sara.brubaker@akerman.com
420 South Orange Avenue, Suite 1200
Orlando, Florida 32801
Phone: (407) 423-4000
Fax: (407) 843-6610

*Counsel for Defendants*
*Twenty-One Eighty-Five, LLC and*
*State Farm Bank, F.S.B.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via e-mail on November 22, 2019 upon the following:

| | |
|---|---|
| Robert W. Murphy, Esq. | Cary I. Flitter, Esq. |
| 121 S.E. 2nd Ave. | FLITTER LORENZ, P.C. |
| Ft. Lauderdale, FL  33316 | 450 Narberth Ave., Suite 101 |
| rphyu@aol.com | Narberth, PA  19072-1822 |
| rwmurphy@lawfirmmurphy,.com | cflitter@consumerslaw.com |
| legalassistant@lawfirmmurphy.com | *Co-Counsel for Plaintiff* |
| *Counsel for Plaintiff* | *(Not yet admitted Pro Hac Vice)* |

*/s/ E. Ginnette Childs*
E. Ginnette Childs, Esq.
FBN 0298130

50880058;1