# EXHIBIT 2



**null / ALL**
**Transmittal Number: 20598310**
**Date Processed: 10/27/2019**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Shelley Lambert<br>State Farm<br>1 State Farm Plz<br># D-2<br>Bloomington, IL 61710-0001 |
| **Electronic copy provided to:** | Steve McAnarney<br>Matthew Melick |

| | |
|---|---|
| **Entity:** | Twenty-One Eighty-Five, LLC<br>Entity ID Number  3437850 |
| **Entity Served:** | Twenty-One Eighty-Five, LLC |
| **Title of Action:** | Kelly Arndt vs. Twenty-One Eighty-Five, LLC |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Broward County Circuit Court, FL |
| **Case/Reference No:** | CACE-19-021264 (09) |
| **Jurisdiction Served:** | Delaware |
| **Date Served on CSC:** | 10/25/2019 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Robert W. Murphy<br>954-763-8660 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

Filing # 97172540 E-Filed 10/11/2019 09:17:58 PM

*10/25/2019*

*1:50 p.m~*

*RT. LIc# 1962*

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: CACE-19-021264 (09)

KELLY ARNDT and SHIRLEY SILKISS,
individually and o/b/o all others similarly
situated,

**CLASS REPRESENTATION**

        Plaintiffs,

vs.

# S U M M O N S

TWENTY-ONE EIGHTY-FIVE, LLC,
a Delaware limited liability company,
and STATE FARM BANK, F.S.B.,
a federal savings bank,

        Defendants.

_____/

THE STATE OF FLORIDA:
To Each Sheriff of the State:

    YOU ARE COMMANDED to serve this Summons and a copy of the Complaint or Petition in this action on the Defendant, **TWENTY-ONE EIGHTY-FIVE, LLC**, a Delaware limited liability company, through its Registered Agent:

**CORPORATION SERVICE COMPANY
251 LITTLE FALLS DRIVE
WILMINGTON, DELAWARE 19808**

    Each Defendant is required to serve written defenses to the Complaint or Petition on Plaintiff's attorney, whose name and address is: Robert W. Murphy, Esquire, 1212 S.E. 2nd Avenue, Fort Lauderdale, Florida 33316; (954) 763-8660, within twenty (20) days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on the Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

    WITNESS my hand and the seal of this Court on this _____ day of _    OCT 23 2019

                    BRENDA D. FORMAN
                    Clerk of Court

                    By:_____
                            As Deputy Clerk

**BRENDA D. FORMAN**

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera; si usted desea que el tribunal considera du defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso. Si usted no contesta la demanda a tiempo, puedes perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demand por su cuenta, al mismo tiempo en que presenta su respuesta ante al tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demandante).

## IMPORTANT

Des poursuites juficiaries ont ete entreprises contre vous. Vous avez (20) jours consecutifs a partir de la date de l'assignation de cet'te citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre response ecrite , avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre response ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une response ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedir une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant our a son avocat) nomme ci-dessous.

**ROBERT W. MURPHY, ESQ.**
**1212 S.E. 2ND AVENUE**
**FORT LAUDERDALE, FLORIDA 33316**
**TELEPHONE: (954) 763-8660**
**FACSIMILE:   (954) 763-8607**

**E-MAIL:  RWMURPHY@LAWFIRMMURPHY.COM**

2

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.:  CACE-19-021264 (09)

KELLY ARNDT and SHIRLEY SILKISS,
individually and o/b/o all others similarly
situated,

**CLASS REPRESENTATION**

        Plaintiffs,

vs.

TWENTY-ONE EIGHTY-FIVE, LLC,
a Delaware limited liability company,
and STATE FARM BANK, F.S.B.,
a federal savings bank,

        Defendants.

_____/

### COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

Plaintiffs, Kelly Arndt, an individual ("Ms. Arndt"), and Shirley Silkiss, an individual

("Ms. Silkiss") (collectively the "Class Representatives"), on behalf of themselves and all others

similarly situated, by and through their undersigned attorneys, sue Defendants, Twenty-One

Eighty-Five, LLC, a Delaware limited liability company ("State Farm Holder"), and State Farm

Bank, F.S.B., a federal savings bank ("State Farm Bank"), and state as follows:

### INTRODUCTION

1.    This class action seeks equitable and monetary relief to redress an unlawful and

deceptive pattern of practice of wrongdoing perpetuated by State Farm Bank with respect to the

sale of vehicles after repossession without providing the proper notices to vehicle owners in

contravention of the requirements of the Uniform Commercial Code ("UCC").[1]

---

[1] As the UCC is the primary source of law for the creation and enforcement of a security interest throughout the fifty
states, the Class Representatives may, at times, refer to the operative sections of the UCC, as presented in the UCC
Article, as opposed to a specific state statute, unless the specific state statutory authority is relevant.

2.     As more particularly described below, Defendants violated the UCC in the following respects:

A.     the failure to clearly identify the type of sale to be conducted and, if public, the time and place of a public disposition or the time after which any other disposition is made as required by Fla. Stat. 679.613;

B.     the failure to disclose that Plaintiffs and other class members were entitled to an accounting of the unpaid indebtedness and the charge, if any, for an accounting, as required by Fla. Stat. §§679.614(1)(a) and 679.613(1)(d);

C.     the failure to disclose the correct time period for redemption of the vehicle at any time prior to disposition in accordance with Fla. Stat. §679.623(3); and

D.     the failure to provide the secondary borrower with notice before disposition of the collateral pursuant to §679.611(3)(b).

3.     Plaintiffs bring this action on behalf of themselves and all other similarly situated Florida consumers who purchased vehicles financed by State Farm Bank that were "consumer goods," whose vehicles were repossessed and as to whom State Farm Bank failed to comply with the disclosure requirements of §679.614, Florida Statutes.

4.     Plaintiffs seek declaratory, injunctive, or other equitable relief, and an award of actual and statutory damages as provided for under Florida law, both under the UCC and Florida Statutes Chapter 559, *et sequi*, known more commonly as the "Florida Consumer Collection Practices Act" ("FCCPA"), and such other further relief this Court may deem appropriate.

## ALLEGATIONS TO PARTIES

5.     At all times material hereto, Ms. Arndt was *sui juris* and a resident of Escambia County, Florida.

2

6. At all times material hereto, Ms. Silkiss was *sui juris* and a resident of Broward County, Florida.

7. At all times material hereto, State Farm Bank was a federal savings bank with its principal place of business in Bloomington, Illinois. As part of its business, State Farm Bank provided *inter alia* financing to purchasers of new and used motor vehicles nationally in the United States, including in the State of Florida.

8. At all times material hereto, State Farm Holder was a Delaware limited liability company which was a wholly owned subsidiary of State Farm Bank with its principal place of business in Bloomington, Illinois. As part of its business, State Farm Holder receives assignments of consumer loans from its parent, State Farm Bank.

9. At all times material hereto, State Farm Bank acted as the servicer for the loans assigned to State Farm Holder.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

10. On or about September 6, 2017, Ms. Arndt entered into an agreement with State Farm Bank to finance the purchase of a motor vehicle ("Arndt Finance Agreement").

11. Ms. Silkis – the mother of Ms. Arndt – is a co-borrower on the Arndt Finance Agreement.

12. A true and correct copy of the Arndt Finance Agreement is attached hereto and incorporated by reference as Exhibit "A".

13. Pursuant to the Arndt Finance Agreement, Ms. Arndt financed the purchase of a 2017 Mazda MX-5 Miata ("Arndt Vehicle") for her personal and household purposes.

14. After the consummation of Arndt Finance Agreement, State Farm Bank assigned or sold the Arndt Finance Agreement to State Farm Holder for unknown consideration and under unknown terms.

3

15.     After the assignment of the Arndt Finance Agreement, State Farm Bank continued to service the Arndt Finance Agreement, including the collection of installment payments.

16.     On or about October 25, 2018, State Farm Bank repossessed the Arndt Vehicle.

17.     On or about October 31, 2018, State Farm Bank sent to Ms. Arndt a notice advising Ms. Arndt of the intent of State Farm Bank to dispose of the Arndt Vehicle in purported compliance with the requirements of the UCC ("Arndt Notice of Sale").

18.     A true and correct copy of the Arndt Notice of Sale is attached hereto and incorporated by reference as Exhibit "B".

19.     The Arndt Notice of Sale fails to comply with Article 9, UCC, in the following respects:

A.     Failure to Identify Method of Intended Disposition: the Arndt Notice of Sale ambiguously states that State Farm Bank intended to dispose of the Arndt Vehicle by "private sale or any other commercially reasonable manner on or before November 15, 2018," without identifying the type of sale in contravention of Fla. Stat. §679.613(1)(c).

B.     Failure to Disclose Details of Public Sale: if the disposition was by public sale, State Farm Bank failed to disclose the time and place of the public disposition or the time after which any other disposition was to be made which is required pursuant to Fla. Stat. §679.613(1)(e).

C.     Failure to Properly Disclose Right of Redemption: the Arndt Notice of Sale falsely advised Ms. Arndt of her right to redeem the vehicle "on or before November 15, 2018" whereas Fla. Stat. §679.623 allows a borrower to redeem collateral "at any time prior to disposition".

D.     Failure to Disclose Right to Accounting: the Arndt Notice of Sale states it "will provide a written accounting regarding the *disposition* of the motor vehicle," rather than an

4

accounting of the unpaid indebtedness and the charge, if any, for an accounting, as required by Fla. Stat. §§679.614(1)(a) and 679.613(1)(d).

20.     State Farm Bank did not send Ms. Silkiss, as a co-borrower under the Arndt Finance Agreement, a notice of the intended disposition of the Arndt Vehicle pursuant to Fla. Stat. §679.611(3)(b).

21.     On information and belief, the Class Representatives allege that the defective notice of sale represented by the Arndt Notice of Sale, attached hereto as Exhibit "A," or variants of it containing one or more instances of non-compliance with Fla. Stat. §679.614, is the standard notice ("Notice of Sale") that State Farm Bank has sent to Florida consumers since at least January 1, 2002, the effective date of revised Article 9, UCC.

22.     Under the UCC, with respect to consumer goods transactions, a notification that lacks <u>any</u> of the information required under Fla. Stat. §679.614(1) is insufficient as a matter of law.  UCC Comment, Note 1, Fla. Stat. §679.614(1).

23.     Under the UCC, *"every non-compliance with the requirements of Part 6 in a consumer-goods transaction results in liability, regardless of any injury that may have resulted."* UCC Comment, Note 4, Fla. Stat. §679.625 (emphasis added).

### *Post-Repossession Credit Reporting and Collection Activities of State Farm Bank*

24.     Fla. Stat. §679.626, and the previous §679.507, as interpreted by the Florida Supreme Court in *Weiner v. American Petrofina Marketing, Inc.*, 482 So.2d 1362, 1365 (1986), provides that when a secured party fails to comply with §679.614's notice requirements, the proceeds of a disposition of collateral are presumed to be equal with the sum of the indebtedness. Thus, it is statutorily presumed that the secured party is due no deficiency after the disposition of the collateral.

25.     To rebut the statutory presumption and lawfully seek to collect deficiency balances from borrowers issued defective post-repossession notices, the secured party must establish that the amount of the proceeds that it would have realized is less than the indebtedness pursuant to Fla. Stat. §679.626(4) and the former §679.507(1).

26.     After the sale of the Arndt Vehicle, State Farm Bank sent to Ms. Arndt a collection notice ("Arndt Deficiency Collection Notice") in purported compliance with Fla. Stat. §679.616.

27.     A true and correct copy of the Arndt Deficiency Collection Notice is attached hereto and incorporated herein by reference as Exhibit "C".

28.     On information and belief, the Class Representatives allege that the collection notice represented Arndt Deficiency Collection Notice is the standard notice ("Deficiency Collection Notice") that State Farm Bank  sent to consumers to collect deficiencies after the sale of repossessed vehicles.

29.     The Class Representatives are informed and believe and, on that basis, allege that Defendants have knowingly collected or attempted to collect deficiency balances from consumers who were sent defective post-repossession notices under Fla. Stat. §679.614, through *inter alia* the Deficiency Collection Notice, without overcoming the statutory presumption, barring the collection of such deficiencies or accounting for or providing for a set-off in the amount of the statutory damages set forth under Fla. Stat. §679.625(3)(b).

### *Attorneys' Fees Entitlement*

30.     The loan agreement represented by Arndt Finance Agreement is a standard contract ("Finance Agreement") used by Defendants to extend credit to consumers such as Plaintiffs and persons similarly situated.

6

31.     The Finance Agreement provides for the recovery of attorney's fees and costs in the event the holder of the finance agreement is required to take any action to enforce the terms thereof.

32.     The Class Representatives have retained the undersigned law firms to represent their interest herein and are obligated to pay said firms a reasonable fee for its services.

33.     Pursuant to Fla. Stat. §57.105(7), when a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party (whether as plaintiff or defendant) when that party prevails in the contract action.

## CLASS REPRESENTATION ALLEGATIONS

### *Definition of Class*

34.     Pursuant to Rule 1.220(c)(2)(D)(ii), Florida Rules of Civil Procedure, the class is composed of all Florida residents who, in the four (4) years preceding the filing of the instant action to the date hereof:

(a)     have or had a finance agreement ("Finance Agreement") held by State Farm Bank;

(b)     had their motor vehicle and other personal property repossessed by State Farm Bank or its agents;

(c)     were sent a post-repossession notice in the form or substantially similar form as the Notice of Sale, or in the case of a co-obligor were not sent notices in the form of Exhibits "B"; and

(d)     who have not obtained a discharge in bankruptcy applicable to any such Finance Agreement.

7

35.     The class contains a subclass ("Deficiency Collection Notice Sub-Class") consisting of all class members who meet all of the requirements of the class definition contained above, and who were sent a Deficiency Collection Notice in the form of Exhibit "C" (or in the case of a co-obligor were not sent a notice) and have been subjected to collection for a deficiency.

***Statement of Maintainable Class Claims***

36.     Pursuant to Rule 1.220(c)(2)(A), Florida Rules of Civil Procedure, this is a case maintainable on a class-wide basis pursuant to Rule 1.220(b)(2) and (b)(3), Florida Rules of Civil Procedure, and the Class Representatives bring this action on behalf of themselves and of a class of all other persons similarly situated, to remedy the ongoing unfair, unlawful, and/or deceptive business practices alleged herein, and seek redress on behalf of all those persons who have been harmed thereby.

***Identification of Common Questions of Law or Fact***

37.     Pursuant to Rule 1.220(c)(2)(B), Florida Rules of Civil Procedure, there are questions of law and fact common to the Class, which common issues predominate over any issues involving owing individual class members.

38.     The factual question common to the Class Representatives and to each class member is that each was sent a letter in the form or substantially similar form of the Notice of Sale (represented by Exhibit "B").

39.     With respect to the Deficiency Collection Notice Sub-Class, the factual question common to the Class Representatives and to each class member is that each was a letter in the form or substantially similar form of the Deficiency Collection Notice (represented by Exhibit "C") or has been subject to collection and credit reporting by State Farm Bank in an attempt to collect a deficiency.

40.     Pursuant to Rule 1.220(c)(2)(B), Florida Rules of Civil Procedure, the principal legal question common to the Class Representatives and to each class member is whether the Notice of Sale complies with Florida law with respect to providing the disclosures set forth under Fla. Stat. §§679.614(1) and 679.613(1).

41.     Pursuant to Rule 1.220(c)(2)(B), Florida Rules of Civil Procedure, the principal legal question common to the Class Representative and to each member of the Deficiency Collection Notice Sub-Class is whether State Farm Bank attempted to collect a deficiency without overcoming the statutory presumption barring the collection of such deficiencies or accounting for or providing for a set-off in the amount of the statutory damages under Fla. Stat. §679.625(3)(b).

### *Allegations of Typicality*

42.     Pursuant to Rule 1.220(c)(2)(C), Florida Rules of Civil Procedure, the Class Representatives' claims are typical of those of the classes they seek to represent in that the Class Representatives were sent form notices in the forms of Exhibits "B" and "C" or in the case of a co-obligor, such as Ms. Silkis, were not sent notices in the forms of Exhibits "B" and "C", and have been subjected to the collection and credit reporting activities described above. As such, the claim of the Class Representatives is identical to that of the class members.

### *Allegations of Numerosity*

43.     In the consumer finance industry in Florida, similar financial institutions experience a default rate of 3% to 5% of their portfolios. *See, National Credit Union Administration Quarterly Report, 1st Quarter 2018* [delinquency rate for auto loans held by credit unions at 5.5 % for first quarter of 2018); *New York Federal Reserve Quarterly Report* (1st Quarter 2018) [delinquent auto loans at 4.3%]; *see, generally,* S. Agarwal and B. Ambrose, *Household Credit Usage (2007).* Based on the best due diligence and the experience of Class Counsel, the

9

Class Representatives believe that State Farm Bank repossessed over seventy-five (75) vehicles and other personal property in a calendar year in the State of Florida.

44.     Based on the foregoing, the prospective class numbers are at least in the hundreds and are so numerous that joinder of all members would be impractical.  The exact size of the proposed class and the identity of the members thereof are readily ascertainable from State Farm Bank's business records.

### *Adequacy of Class Representatives*

45.     Pursuant to Rule 1.220(c)(2)(D)(iii), Florida Rules of Civil Procedure, the Class Representatives will fairly and adequately protect and represent the interest of each class member.

46.     The Class Representatives have retained counsel with substantial experience in handling class actions in federal and state court.  Further, counsel for the Class Representatives have substantial experience in litigating individual and class actions under the UCC.

47.     The Class Representatives have no conflicts of interest which would interfere with their ability to represent the interest of the class members.

48.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Because the damages suffered by the individual class members may be relatively small compared to the expense and burden of litigation, it would be impractical and economically unfeasible for class members to seek redress individually.  The prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications with respect to the individual class members against State Farm Bank.

49.     The Class Representatives are represented by counsel competent and experienced in both consumer protection and class action litigation.

50.     Members of the proposed class who have an interest in individually controlling the prosecution of separate claims against State Farm Bank will not be prejudiced by this action.  Each

10

member of the proposed class will be identified through discovery from State Farm Bank and will be notified and given an opportunity to opt out of the class.

51.     The Class Representatives do not presently know the nature and extent of any pending litigation to which a member of the proposed classes is a party and in which any question of law or fact controverted in the present action is to be adjudicated. The Class Representatives will identify any such pending litigation by discovery from State Farm Bank.

52.     This Court is an appropriate forum for the present action, in that Ms. Silkiss, as a Class Representative, was and is, at all times herein mentioned, and has been, a resident of this county and a secondary borrower under the Arndt Finance Agreement; and State Farm Bank does business providing financing of consumer goods to consumers throughout the State of Florida and in this county.

53.     There are no difficulties likely to be encountered by the Court in the management of this proposed class action.

54.     The Class Representatives' counsel is entitled to a reasonable fee from the class members or from a common fund for the handling of this action.

### *Appropriateness of Hybrid Class under Rule 1.220 (b)(2) and (3)*

55.     Certification of a class under Rule 1.220(b)(2), Florida Rules of Civil Procedure, is appropriate as Defendants has acted on grounds generally applicable to the Class with respect to the collection and credit reporting activity described above, thereby making appropriate equitable relief with respect to the Class as a whole. Unless restrained from such activities, Defendants will continue to unlawfully harm the interests of the Class Representatives and the class for which no adequate remedy at law exists.

56.     Certification of a class under Rule 1.220(b)(3), Florida Rules of Civil Procedure, is also appropriate in that:

(a)     The questions of law or fact common to the members of the class predominate over any questions affecting an individual class member; and

(b)     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

57.     The Class Representatives request certification of a "hybrid" class for monetary damages under Rule 1.220(b)(3), and for equitable relief under Rule 1.220(b)(2), Florida Rules of Civil Procedure. See, *Penson v. Terminal Transport Co., Inc., 634 F.2d 989, 994 (5th Cir.1981); Agan v. Katzman & Korr, P.A.,* 222 F.R.D. 692 (S.D.Fla.2004).

## COUNT I - ACTION FOR VIOLATION OF ARTICLE 9, UNIFORM COMMERCIAL CODE
### (Against State Farm Holder Only)

58.     This is an action involving an amount in controversy in excess of Fifteen Thousand Dollars ($15,000), exclusive of interest, costs and attorney's fees.

59.     Plaintiffs reallege and reincorporate herein by reference the allegations of paragraphs 1 through 57 above as though fully set forth herein.

60.     As detailed above, the UCC regulates a secured party's right to dispose of collateral following default.

61.     As detailed above, Defendants have engaged and are engaging in ongoing material violations of the law in that the post-repossession notice it provided to Plaintiffs and all other consumers similarly situated, following the repossession of a motor vehicle, failed to contain the statutorily mandated disclosures and information required under the UCC.  Defendants have thus deprived Plaintiffs and other members of the class of substantial consumer rights granted to them under Florida law.

62.     Because State Farm Holder has disposed of the class members' vehicles and issued notices to class members which fail to provide them the required information and disclosures to

which they are entitled under Florida law, State Farm Holder is liable to Ms. Arndt and to each proposed class member for an amount "not less than the credit service charge plus 10 percent of the principal amount of the debt or the time-price differential plus 10 percent of the cash price." §679.625(3)(b) (effective 1/1/02) and the former §679.507(1), Florida Statutes.

63.    State Farm Holder's failure to provide the statutorily mandated post-repossession notice to Plaintiffs and the class members precludes it from seeking deficiencies from them. As State Farm Bank failed to provide proposed class members with the statutorily mandated notice, the proceeds of disposition of the collateral are presumed to equal the indebtedness. §679.626(2), (3), (4), Florida Statute.   To the extent Defendants have collected or attempted to collect deficiencies from proposed class members without first introducing proof of a different value of the vehicle, Defendants have done so unlawfully.  As Defendants failed to rebut the statutory presumption that Plaintiffs and each class members' vehicle was equal in value to the alleged indebtedness, Defendants have no right to collect or attempt to collect deficiencies from proposed class members.

64.    As a direct and proximate result of the acts hereinabove alleged and State Farm Holder's ongoing unlawful conduct, Ms. Arndt and the members of the proposed class have been damaged and have suffered economic losses in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**COUNT II - ACTION FOR DECLARATORY RELIEF**

65.    This is an action for equitable relief involving an amount in controversy in excess of Fifteen Thousand Dollars ($15,000), exclusive of interest and costs.

66.    Plaintiffs reallege and reincorporate herein by reference the allegations of paragraphs 1 through 57 above as though set forth in full herein.

13

67.     An actual controversy has arisen between Plaintiffs and the members of the proposed class, on the one hand, and State Farm Holder, on the other hand, as to their respective rights, remedies and obligations.  Specifically, Plaintiffs allege that the acts and practices of State Farm Bank, as hereinabove alleged, are unlawful, unfair and/or deceptive, and that they and other members of the proposed class are not liable for any deficiency balances following disposition of their repossessed motor vehicles, are entitled to restitution for any and all amounts paid pursuant to demands by State Farm Holder for such deficiencies, plus interest, and are entitled to statutory damages and any other such amounts of restitution or damages as the Court may order.  State Farm Holder contends to the contrary.

68.     Accordingly, Plaintiffs seek a declaration as to their respective rights, remedies, and obligations of the parties.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT III - ACTION FOR UNJUST ENRICHMENT

69.     This is an action for equitable relief involving an amount in controversy in excess of Fifteen Thousand Dollars ($15,000), exclusive of interest and costs.

70.     Plaintiffs reallege and reincorporate herein by reference the allegations of paragraphs 1 through 57 above as set forth in full herein.

71.     Plaintiffs contend that Defendants have been unjustly enriched at the expense and to the detriment of the class members by collecting monies to which it is not entitled.

72.     Although it would be unjust for Defendants to retain monies wrongfully collected, Defendants failed or refused to refund the amounts wrongfully collected and unlawfully seeks to collect additional amounts to which it is not entitled.

WHEREFORE, Plaintiffs pray for relief as set forth below.

14

### COUNT IV - ACTION FOR VIOLATION OF
### FLORIDA CONSUMER COLLECTION PRACTICES ACT
#### (As to Deficiency Collection Notice Sub-Class)

73.     This is an action for violation of Florida Statutes Chapter 559, *et sequi*, known more commonly as the "Florida Consumer Collection Practices Act" ("FCCPA"), seeking damages in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of interest, costs and attorney's fees.

74.     Plaintiffs reallege and reincorporate herein by reference the allegations of paragraphs 1 through 57 above as set forth in full herein.

75.     At all times material hereto, the monies purportedly owed under the Finance Agreement constituted "debt" or "consumer debt" as defined under Fla. Stat. §559.55(1).

76.     At all times material hereto, Plaintiffs were "debtor(s)" or "consumer debtor(s)" as defined under Fla. Stat. §559.55(2).

77.     At all times material hereto, State Farm Bank was a "creditor" as defined under Fla. Stat. §559.55(3).

78.     As more particularly described above, with respect to the Deficiency Notice Sub-Class, Defendants violated the FCCPA in that it has claimed, attempted or threatened to enforce a debt when it knew that the debt was not legitimate or asserted the existence of some other legal right when it knew that the right did not exist in contravention of Fla. Stat. §559.72(9), to-wit: the right to collect a deficiency in an amount and in a manner not authorized by the UCC.

79.     As a direct and proximate result of the violation of the FCCPA by Defendants, the Class Representatives are each entitled to recover statutory damages in the amount of $1,000.00 together with an aggregate award of additional statutory damages not to exceed the lesser of $500,000 or 1% of the net worth of Defendants for all remaining class members pursuant to Fla. Stat. §559.77(2).

80.     Pursuant to Fla. Stat. §559.77, the Court is empowered to enjoin Defendants from further violation of the Act and to direct such other and further equitable relief as may be necessary and proper.

81.     Pursuant to Fla. Stat. §559.72(2), the Class Representatives are entitled to recover reasonable attorney's fees and costs for the filing of the instant action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

A.     For an order certifying this claim as a class action;

B.     For an order finding and declaring that the acts and practices as challenged herein are unlawful, unfair and deceptive;

C.     For an order finding and declaring that Plaintiffs and the class members do not owe State Farm Holder any of the deficiency balances purportedly owed following disposition of their vehicles;

D.     For an order preliminarily and permanently enjoining Defendants from engaging in the practices challenged herein;

E.     For an order of restitution and/or disgorgement in an amount to be determined at trial, which amount is at least equal to all sums collected by Defendants for alleged deficiency balances following the disposition of repossessed motor vehicles in violation of Florida law;

F.     For statutory damages against State Farm Holder for each class member in the amount of either the credit service charge plus ten percent of the principal amount of the obligation, or the time-price differential plus ten percent of the cash price, whichever is greater, pursuant to Fla. Stat 679.625(3)(b);

G.     For statutory and actual damages against Defendants for the Deficiency Collection Notice Sub-Class members pursuant to Fla. Stat. §559.77;

H.    For an order requiring Defendants to remove any adverse credit information which State Farm Bank previously reported to credit reporting organizations on the deficiency balances;

I.    For pre-judgment interest to the extent permitted by law;

J.    For an award of attorney's fees, costs and expenses incurred in the investigation, filing and prosecution of this action to the extent permitted by law pursuant to Fla. Stat. §57.105(7) and §559.72(2); and

K.    For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, Kelly Arndt and Shirley Silkiss, pursuant to Rule 1.430, Florida Rules of Civil Procedure, demand a trial by jury of all issues so triable.

DATED on this 11th day of October, 2019.

/s/ Robert W. Murphy
ROBERT W. MURPHY, ESQ.
Florida Bar No.: 717223
1212 S.E. 2nd Avenue
Fort Lauderdale, FL 33316
Telephone:  (954) 763-8660
Facsimile:  (954) 763-8607
E-Mails:  rphyu@aol.com
rwmurphy@lawfirmmurphy.com;
legalassistant@lawfirmmurphy.com

CARY I. FLITTER, ESQ.
PA Attorney ID: 35047,
to be admitted *Pro Hac Vice*
FLITTER LORENZ, P.C.
450 Narberth Avenue, Suite 101
Narberth, PA 19072-1822
Telephone: (610) 822-0782
Facsimile:  (610) 667-0552
E-Mail:  cflitter@consumerslaw.com

***Counsel for Plaintiffs***

17

# EXHIBIT "A"



REFERENCE #: 10000000127092

## PROMISSORY NOTE AND SECURITY AGREEMENT

State Farm Bank, F.S.B.
Bloomington, IL
877-734-2265

Date: 09/06/2017

| Borrower: | Ms Kelly Arndt |
|---|---|
| Address: | 1102 N 48th Ave |
|  | Pensacola FL  32506-4724 |
| Co-Borrower: Ms Shirley Silkiss | |
| Co-Borrower: | |
| Co-Borrower: | |
| Co-Borrower: | |
| Co-Borrower: | |

Promise to Pay: The undersigned ("Borrower", "you" or "your"), jointly and severally, promise(s) to pay to the order of State Farm Bank, F.S.B. ("Lender") at P.O. Box 5961, Madison, Wisconsin 53705-0961, the Amount Financed shown below with interest (Finance Charge) on the unpaid balance of the Amount Financed at the Annual Percentage Rate ("APR") shown below and accruing daily until the Amount Financed is paid in full. Interest shall be computed on the basis of a year consisting of 365 days or 366 days for leap years and charged for the actual number of days elapsed. Borrower shall make payments according to the payment schedule shown below. The due date of the final payment is the final maturity of this Promissory Note and Security Agreement ("Note"), and any remaining unpaid amounts shall be due and owing on that date. The Total of Payments and Finance Charge shown below are estimates based on Borrower making the proper payment on each scheduled due date. Payments made after any due date will increase the total amount of Finance Charge and Total of Payments.

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE  The cost of your credit as a yearly rate. | FINANCE CHARGE  The dollar amount the credit will cost you. | Amount Financed  The amount of credit provided to you or on your behalf. | Total of Payments  The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 5.240 % | $ 8,029.53 | $ 40,302.39 | $ 48,331.92 |

Your payment schedule will be:

| Number of Payments: | Amount of Payments: | When Payments are due: | |
|---|---|---|---|
| 84 | $ 575.38 | Monthly | Beginning 10/21/2017 |

☐ [Automatic Payment Annual Percentage Rate Reduction] (check if applicable)

When this box is checked, an APR reduction program is in place and you have qualified for an APR reduction of 0.15% by selecting recurring monthly electronic payments for this loan from an account with State Farm Bank®. The APR listed above includes this APR reduction when this box is checked.

Property insurance is required.  You may obtain property insurance from anyone acceptable to the Lender.

Security: You are giving a security interest in the motor vehicle, trailer, watercraft, motor, and other property listed as collateral below, and any proceeds of this collateral being purchased or refinanced with the loan proceeds.

| Collateral/Vehicle | Year | Make | Model | Serial No. or VIN |
|---|---|---|---|---|
| Automobile | 2017 | MAZDA | MX-5 MIATA GRAND TOURIN | JM1NDAM75H0105197 |
|  |  |  |  |  |
|  |  |  |  |  |

Filing Fee: You agree to pay any lien filing fees.

Late Charge: If any payment is late more than 10 days you will be charged 5% of the unpaid payment or $10.00, whichever is greater.

Prepayment: If you pay this Note off in full within 12 months of the date of this Note, you will have to pay Lender a prepayment penalty of $100. If this Note includes a Military Lending Act Addendum, there will be no prepayment penalty.

Other Terms: See your contract terms on all pages of this Note for any additional information about nonpayment, default, and required repayment in full before the scheduled date, prepayment refunds and penalties and further information about security interests.

REFERENCE #: 100000000127092

**IF YOU DO NOT MEET YOUR OBLIGATIONS UNDER THIS NOTE, YOU MAY LOSE THE VEHICLE YOU PURCHASED WITH THIS LOAN, OR WHICH SERVES AS COLLATERAL FOR THIS LOAN.**

<u>USE OF AGENT:</u> Your financing may be obtained through clerical assistance of a State Farm® insurance agent or staff member; if so (1) no compensation of any kind is to be paid between the seller of your vehicle and the State Farm agent or staff member; and (2) no referral relationship or arrangement is to exist between the State Farm agent or staff member and the seller of your vehicle relating to the purchase of your vehicle or your loan unless this transaction is a "Purchase Money Loan" under 16 C.F.R. Section 433.1(d) authorized by Lender. Unless otherwise authorized by Lender, you are to receive the credit application, this Note, and other documentation for this loan directly from Lender or a State Farm agent or staff member and not from the seller of the vehicle and those documents are to be completed and executed directly with Lender or in the presence of the State Farm agent or staff member. If your loan is being obtained through the assistance of a third party ("Agent"), you understand that the Agent is not an employee of Lender and the Agent is not authorized to make representations or bind Lender.

**IF THE FOREGOING DISCLOSURE IS NOT AN ACCURATE STATEMENT OF THE WAY YOUR LOAN TRANSACTION HAS BEEN HANDLED OR IF YOU DO NOT UNDERSTAND ANY OF THE DISCLOSURE INCLUDING WHAT CONSTITUTES A "PURCHASE MONEY LOAN," DO NOT EXECUTE ANY FURTHER DOCUMENTATION AND CONTACT STATE FARM BANK AT ONCE AT 877-734-2265. IF YOU ARE DEAF, HARD OF HEARING, OR DO NOT USE YOUR VOICE TO COMMUNICATE, YOU MAY CONTACT US VIA 711 OR OTHER RELAY SERVICES.**

By executing this Note you acknowledge that you have received this disclosure, that you have read this disclosure, that you understand this disclosure, and that your loan transaction has been handled in accordance with the conditions stated above.

<u>The following Notice applies only if the transaction is a "Purchase Money Loan" under 16 C.F.R. Section 433.1(d)</u>

## NOTICE

<u>ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.</u>

### ADDITIONAL TERMS AND PROVISIONS

<u>PAYMENTS:</u> All payments must be made in United States currency via check, money order, or electronic payment. Borrower may make a prepayment of principal in full or in part at any time before maturity. If Borrower prepays this Note in full, then Borrower may be required to pay Lender a prepayment penalty as disclosed above in the Truth in Lending Disclosures. Payments will generally be applied first to interest outstanding and then to principal on outstanding payment installment(s) billed, continuing until no outstanding payment installments billed remain, and then to any late fees. Any remaining overpayment will be applied, unless otherwise agreed to by Lender, based upon the method of payment. Recurring preauthorized electronic transfer overpayments will be applied to the last installment(s) which will not excuse or defer any scheduled payments until this Note is paid in full. Overpayments as a result of other payment methods will be applied to the principal of the next payment installment(s) and will reduce or satisfy the next payment(s) due. Mailed payments for the exact amount of the monthly payment installment plus late fee will be applied to the outstanding payment installment and late fee. Interest will accrue on the unpaid principal balance regardless of whether payments are applied to the next payment due or to the last installment(s).

<u>SECURITY INTEREST:</u> To secure payment of this Note and all renewals and extensions hereof, Borrower grants and pledges to Lender a security interest in the vehicle described above, and all attachments and all accessions thereto and all proceeds thereof ("Collateral").

<u>PERFECTION OF SECURITY INTEREST:</u> Borrower is responsible for obtaining clear title to the Collateral, including removing or paying off any lien(s) on the Collateral and allowing Lender to place a first lien on the Collateral. To the extent allowed by applicable law, Lender is hereby appointed as Borrower's attorney-in-fact to do at Lender's option and at Borrower's expense all things necessary or desirable to perfect, keep perfected and maintain Lender's security interest in the Collateral, to protect such Collateral and to execute any document or instrument to perfect, keep perfected and protect such security interest of the Lender in the Collateral. This may include paying off any senior liens on the Collateral to secure first lien position for Lender and any expenses incurred with such payoff may be charged to Borrower as fees due at payoff. Borrower further explicitly authorizes Lender, at Borrower's expense, to order a duplicate title or undertake any other title work necessary for Lender to perfect its security interest in the collateral. IN NO EVENT WILL LENDER BE LIABLE TO BORROWER FOR FAILURE TO OBTAIN CLEAR TITLE TO THE COLLATERAL, INCLUDING REMOVING OR PAYING OFF ANY LIEN(S) ON THE COLLATERAL.

REFERENCE #: 10000000137092

**COLLATERAL:** Borrower covenants, represents and agrees with Lender as follows: (a) that Borrower is the owner of the Collateral free from any lien, security interest, encumbrances or claim and will defend the Collateral against the claims and demands of all persons; and (b) that Borrower will not sell, lease or encumber the Collateral or grant any subsequent security interest therein nor part with possession thereof; and (c) that if Collateral is in the possession of Borrower, that Borrower will not remove the Collateral from the fifty United States (including the District of Columbia) without the prior written consent of Lender; and (d) that Borrower will not use or permit the Collateral to be used in violation of any law, ordinance or policy of insurance covering said Collateral; and (e) that Borrower will maintain the Collateral in good condition and repair and shall pay taxes and assessments levied on the Collateral; and (f) that the Collateral may not be used in whole or in part for hire; and (g) that the Collateral will not be used as a residence. Borrower will promptly advise Lender of any change of address or change in location of the Collateral.

**USE OF PROCEEDS:** The proceeds of this Note will be used to acquire the Collateral or to refinance prior indebtedness used to acquire the Collateral, except to the extent there are excess proceeds (i.e., cash out proceeds) that may be used at Borrower's discretion, and Lender may disburse such non-excess proceeds to the seller of the Collateral or to such other lender.

**PAYMENT OBLIGATIONS:** Loss, theft, damage to, destruction and seizure of the Collateral shall not relieve Borrower from the payment and performance of any obligation hereunder or the indebtedness secured hereby.

**INSURANCE:** Borrower shall procure and maintain insurance on the Collateral for the full term of this Note against the risks of fire, theft, collision and such other risks as Lender may require in such amounts and conditions and with such insurers as are satisfactory to Lender; and Borrower shall deliver to Lender within ten (10) days from the date of the Note, a fully paid policy or policies of insurance containing a Lender's Loss Payable Clause (stating that the proceeds are payable to the Lender) in favor of Lender providing for ten (10) days prior written notice of cancellation. If Borrower shall fail, for any reason, to insure the Collateral as required by this Note, or if Borrower's insurance shall be canceled, Lender at its option, may procure such insurance as shall be deemed necessary by Lender and advance the premium therefore on behalf of Borrower. Borrower promises to pay such premiums to Lender, with interest thereon at the Annual Percentage Rate shown above, as additional indebtedness due hereunder and secured hereby, or Lender may, at its option, declare all obligations secured hereby to be immediately due and payable. Borrower assigns to Lender any unearned or returned premiums. To the extent allowed by applicable law, Lender is appointed Borrower's attorney-in-fact to endorse any check or draft payable to Borrower in order to collect such unearned premiums or any benefits of such insurance. All sums received by Lender as payment of insurance losses or for return of premiums under said policies of insurance shall, at the option of Lender, be applied to the unpaid principal balance or to currently maturing installments on this loan.

**PAYOFF PROTECTOR®:** In the event the Collateral is damaged, destroyed, or stolen ("Loss") and the insurer of the Collateral has determined that it is a total loss under the terms of its insurance policy ("Total Loss") and Borrower has provided satisfactory written notice of the Total Loss to Lender, Lender agrees as follows:

AMOUNT WE WILL WAIVE: If EACH of the CONDITIONS of this provision are satisfied and none of the EXCLUSIONS apply, we will waive the difference between your unpaid principal balance under this Note as of the date of the Loss and the entire insurance settlement less:

(1) any past due payment amounts (even within a grace period) or extended payment amounts (unless expressly agreed to in writing by us);

(2) any amount Borrower could otherwise have collected from any insurer through reasonable diligence; and

(3) any deductions the insurance company may make (such as prior damage, condition adjustment, or salvage retention value) when it honors Borrower's claim (excluding the deductible amount).

Outstanding interest and fees as of the date of the Loss will not be waived under this provision.

PAYOFF PROTECTOR PROCESS: Once we are notified of a Loss anticipated to be a Total Loss and provided with the insurance claim number, any payment installment due after the date of the Loss will not be required while the Payoff Protector request is being processed by us. No additional late fees or interest will accrue during this time. If Payoff Protector is applied, we will provide you with an updated loan status that outlines any remaining amounts that may be owed. If Payoff Protector is not applied, monthly payment installments, interest accrual, and late fees (if applicable) will resume, your loan will be extended by one month for each suspended payment installment, and you will be provided with updated documentation regarding your loan.

**CONDITIONS:** We will waive the amount set forth above, provided EACH of the following stipulations are met and none of the **EXCLUSIONS** apply:

(1) this provision and this Note are in effect;

(2) Borrower has timely filed a claim under any policy which may provide coverage (or does so upon our request) and the Collateral is determined to be a Total Loss by the insurer of the Collateral;

(3) the insurance coverage on the Collateral required under this Note has been maintained, is currently in force, and the full amount of any insurance proceeds is paid to us;

(4) Borrower has complied with all other terms and conditions of the Note;

REFERENCE #: 10000000127092

(5) No other coverage is available under any guaranteed asset protection coverage or credit insurance provided to Borrower under any insurance policy;
(6) Borrower notifies us within sixty (60) days of the Loss and provides us with a copy of the settlement, declarations page of the policy, any accident or police report and any other documentation we request; and
(7) Borrower takes necessary steps to recover the Collateral and prevent or reduce any further loss to the Collateral.

**EXCLUSIONS:** Notwithstanding anything in this provision to the contrary, Borrower will not be eligible for Payoff Protector and Borrower will remain liable for any amounts owed under this Note if ANY of the following conditions exists:
(1) Borrower is thirty (30) days or more past due as of the date of the Loss;
(2) Borrower voluntarily surrenders the Collateral to us, we repossess the Collateral, or the Collateral is seized by any governmental authority;
(3) the Total Loss is due to acts of terrorism;
(4) the Total Loss is excluded from coverage by the insurance coverage on the Collateral;
(5) the Loss occurred before the loan funds under this Note were released by us;
(6) in the event multiple pieces of Collateral appear on the Note, the amount waived for any one piece of Collateral shall be an amount of the outstanding principal balance equal to the proportionate value of the Collateral, determined by us, as of the Note date and the original principal balance of the loan.

**TERM:** This provision commences on the date this Note becomes effective and terminates on the date this Note is terminated. In no event will the amount waived or benefit to the Borrower exceed the outstanding loan balance. This is NOT an insurance policy.

**RETURNED INSTRUMENT CHARGE:** Borrower agrees to pay a charge of $25 for each check or instrument submitted as payment on this Note which is later returned unpaid.

**EVENTS OF DEFAULT AND ACCELERATION:** If Borrower shall default in the payment, when due, of any installment of this Note or in the payments or performance of any other obligation hereunder or indebtedness due to Lender, or in case of loss, substantial damage to, destruction, sale, encumbrance, concealment, removal, attachment or levy upon the Collateral; or if any proceeding shall be instituted by or against Borrower (or Borrower's business) under any bankruptcy, insolvency or similar statute; or Borrower shall make an assignment for the benefit of creditors, or Lender shall deem itself insecure; or upon the death or incompetency of any Borrower, endorser or co-signer; or if Borrower makes any representation, warranty, statement or signature to Lender that is false or misleading; or if Borrower fails to maintain accurate contact information with Lender; then upon the happening of any of the foregoing events of default, Lender at its option may declare the unpaid balance of this Note including accrued interest and all other indebtedness and obligations of Borrower to Lender immediately due and payable, without notice or demand. Borrower agrees to pay all of Lender's reasonable costs and expenses in enforcing this Note or in realizing upon the Collateral, including court costs and reasonable attorneys' fees, to the extent permitted by applicable law (including bankruptcy or insolvency proceedings) in addition to an administrative fee of $150.00 assessed by Lender.

**REMEDIES OF LENDER:** Upon the occurrence of any event of default, Lender shall have all of the rights and remedies of a secured party as provided by Article 9 of the Uniform Commercial Code, including, but not limited to, the right of Lender to take immediate possession of the Collateral and anything located therein, with or without judicial process, and for such purpose, to enter on the premises where such Collateral may be located. In the event of default, Borrower agrees to make the Collateral available to Lender at a place acceptable to Lender which is convenient to Borrower. In the event the Collateral is repossessed, Borrower will be assessed an administrative fee of $150.00 in addition to any repossession and storage charges, including storage charges for any personal property located in the Collateral. In the event of resale of the Collateral after repossession, Borrower expressly agrees that the requirements of reasonable notice shall be met if notice is delivered or mailed to Borrower at the address of Borrower shown herein prior to the sale or other disposition of the Collateral as provided by applicable law. Disposition of the Collateral may be made in any commercially reasonable manner. The net proceeds realized upon any sale or other disposition of the Collateral, after deducting expenses of the sale or other disposition, repossession or storage incurred by Lender, shall be applied to the payment of this Note and all other indebtedness or obligations of Borrower to Lender, in such manner as Lender shall elect. Lender shall account to Borrower for any surplus thereafter realized on such disposition, Borrower shall remain liable for any and all unpaid amounts remaining or any other deficiency, which Borrower agrees to pay immediately. All rights and remedies of Lender, whether provided for herein or conferred by law, are cumulative.

**ADDITIONAL REMEDIES:** Demand, presentment for payment, notice of dishonor, and notice of intent to accelerate are hereby waived by Borrower and all cosigners and endorsers hereon. Lender is authorized to appropriate and apply toward payment of this Note any other property belonging to Borrower in the possession of Lender, as well as any indebtedness of Lender to Borrower, and Lender is hereby given a first and prior lien upon such other property. All cosigners and endorsers consent that the time of payment may be extended or renewal notes taken by the holder hereof without notice and that such extension or renewal shall not discharge their liability hereon.

REFERENCE #: 10000000127092

**PROCESSING OF PAYMENTS:** Lender's business days for processing payments are Monday through Friday, excluding Lender's holidays. Payments received on a non-business day will be processed on the next business day, and Finance Charges (interest) continue to accrue on the unpaid balance of the Note. The payment due date will not be extended if it falls on a non-business day, and in such event Borrower should make the payment to Lender in advance of the due date.

**CONSENT TO PHONE AND ELECTRONIC NOTIFICATION:** Each Borrower agrees, in order for Lender to service this Note, to collect any amounts owed under this Note, and to prevent fraud, Lender may contact you by telephone at any telephone number associated with any Borrower, including wireless telephone numbers, which could result in charges to you. Methods of contact may include using pre-recorded/artificial voice messages and/or use of an automatic dialing device. Borrower also agrees that he or she is the subscriber or customary user of any wireless telephone number Borrower provides to Lender and that Borrower has authority to grant Lender permission to call any such wireless telephone number. Each Borrower also agrees that Lender may also contact you by sending text messages or e-mails using any telephone number or e-mail address associated with any Borrower.

**BORROWER CONTACT INFORMATION:** Borrower agrees to update Lender immediately of any change in Borrower's contact information. This includes, but is not limited to, changes to residence address, mailing address, phone number, and email address. Lender shall not have any liability resulting from Borrower's failure to keep Borrower's contact information accurate.

**WAIVER AND SEVERABILITY:** No delay or omission by Lender in exercising any right or remedy shall operate as a waiver of such right or remedy or any other right or remedy. A waiver on any one occasion shall not act as a waiver for any other occasion. Lender may accept late or partial payments or payments marked "in full" or with similar language, without waiving any rights or remedies. If any provision of this Note is held invalid, such invalidity shall not affect the validity and enforceability of the remaining provisions of this Note.

**SUCCESSORS AND ASSIGNS:** All rights of Lender shall also benefit the successors and assigns of Lender, and all obligations of Borrower shall be binding upon Borrower's heirs, beneficiaries, personal representatives, successors and assigns. Borrower may not assign its rights and obligations under this Note, unless the Lender agrees in writing to such assignment. If there is more than one Borrower, their obligations hereunder shall be joint and several. Any changes to this Note must be in writing and signed by Lender.

**CREDIT REPORTING:** Lender may report information about your account to credit bureaus, including negative information. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. Borrower authorizes Lender to obtain consumer reports about Borrower until the Note is paid in full.

**DISPUTING ACCOUNT INFORMATION REPORTED TO CREDIT BUREAUS:** We furnish information about your account to credit bureaus. You have the right to dispute the accuracy of the information reported by writing to us at: State Farm Bank, F.S.B., ATTN: Credit Reporting, P.O. Box 2313, Bloomington, IL 61702-2313.

**GOVERNING LAW:** This Note is governed by federal law and, to the extent not preempted thereby, by the law of the State of Illinois. The acceptance of the Note is expressly conditioned upon Lender's approval and all proceeds will be disbursed by Lender at its principal office in Illinois. Regardless of where you live, your credit application will be forwarded to Lender in Illinois and Lender will process your application and make all lending decisions at or through its offices in Illinois. This Note is entered into in Illinois upon Lender's acceptance. All terms and conditions in this Note (including applicable fees) are material to the determination of the interest rate.

REFERENCE #: 10000000127092

Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (Borrower(s)) and us (Creditors) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NOTICE TO BORROWER: (A) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON EACH PAGE, EVEN IF OTHERWISE ADVISED. (B) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES. (C) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (D) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS NOTE.

ACKNOWLEDGMENT: Borrower agrees to the terms of this Promissory Note and Security Agreement including the additional terms set forth on the preceding pages. Borrower acknowledges receipt of a completed copy of this Note prior to consummation of the loan.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

BORROWER(S) SIGNATURES

X _____

Ms Kelly Arndt

X _____

Ms Shirley Silkiss

X _____

X _____

X _____

X _____





1000060

2013 125515 212 07-25-2017

# EXHIBIT "B"



**StateFarmBank·**

State Farm Bank
P.O. Box 2328
Bloomington, Illinois  61702-2328

### NOTICE OF SALE

October 31, 2018

Kelly Arndt
1102 N 48th Ave
Pensacola, FL  32506-4724

Last 4 of Account #: 0781
Collateral Description: 2017 Mazda MX-5 Miata
Note Date: September 6, 2017
Repossession Date: October 25, 2018

The above vehicle has been repossessed by State Farm Bank  on the above repossession date due to default of your promissory note and security agreement, and will be sold by private sale or any other commercially reasonable manner, to be held any time after November 15, 2018.

To redeem the vehicle, outstanding balance, plus allowable expenses, including repossession fees charged by vendors of $400.00 and a $150 administration fee must be paid on or before November 15, 2018. Repossession fees may be subject to change due to additional fees for vendor expenses and will be assessed to the loan once the collateral is redeemed or sold. Call us for all fees and the exact amount required to redeem the vehicle.

As of the date of this notice - the outstanding balance, plus allowable expenses to redeem the vehicle, is shown below:

| | | |
|---|---|---|
| Principal Balance: | $ | 36,312.55 |
| Interest Accrued through October 31, 2018: | $ | 145.97 |
| Miscellaneous Fees: | $ | - |
| Repossession Fees: | $ | 400.00 |
| Repossession Administration Fees: | $ | 150.00 |
| Late Fees: | $ | 61.31 |
| Total amount to redeem vehicle as of October 31, 2018: | $ | 37,069.83 |

Interest continues to accrue per day at $5.21.

You may have the option to reinstate the vehicle for less than the total amount to redeem vehicle as listed above.  You would be required to pay past due payments, all fees, plus allowable expenses in order to reinstate. **Call us to see if you are eligible for a reinstatement and for the exact amount required to reinstate the vehicle.**



**MEMBER**
**FDIC**

*Home Office, Bloomington, IL*

EQUAL HOUSING
LENDER

**Scanned with CamScanner**



State Farm Bank
P.O. Box 2328
Bloomington, Illinois  61702-2328

We will disclose vehicle location from where you may recover it upon redemption or reinstatement.

If the vehicle is sold, the proceeds, less allowable expenses, will be applied to the outstanding note balance. You'll remain liable for any deficiency balance on the note plus interest at the contract rate. **YOU MAY BE SUBJECT TO SUIT AND LIABILITY IF THE AMOUNT OBTAINED UPON DISPOSITION OF THE VEHICLE IS INSUFFICIENT TO PAY THE CONTRACT BALANCE AND ANY OTHER AMOUNTS DUE.** If the proceeds are more than you owe, to the extent permitted by your loan documents and applicable law, the surplus will be applied to other debts you owe to State Farm Bank. Any remaining surplus after allowable expenses and other debts owed to State Farm Bank are paid, will be refunded.

Upon request, we will provide a written accounting regarding the disposition of the motor vehicle.

If you have any questions regarding the vehicle, or would like to retrieve personal property in the vehicle, please contact us at the phone number or address listed below.

State Farm Bank ®
Attn: Repossession Team
PO Box 2328
Bloomington, IL 61702-2328

888-860-8530, Option 1 Phone
800-881-1806 Fax

Please note:  This loan has been sold to Twenty-One-Eighty-Five L.L.C., a subsidiary of State Farm Mutual Automobile Insurance Company.  State Farm Bank continues to service this loan.

If you are deaf, hard of hearing, or do not use your voice to communicate, you may contact us via 711 or other relay services.

*This message is from a debt collector.*

Notice:  Servicemembers on "active duty" or "active service", or a spouse or dependent of such a servicemember  may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC APP 501-597b) (SCRA).  Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer.  A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php.

"Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800-342-9647 (toll free from the Unites States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.



MEMBER
**FDIC**

*Home Office, Bloomington, IL*



EQUAL HOUSING
LENDER



Scanned with CamScanner

# EXHIBIT "C"



State Farm Bank
P.O. Box 2328
Bloomington, Illinois  61702-2328

December 17, 2018

Kelly Arndt
1102 N 48th Ave
Pensacola, FL 32506-4724

**Account Number:**        8548590781
**Year, Make, Model:**     2017 Mazda MX-5 Miata
**V. I. N. #:**            JM1NDAM75H0105197

Dear Kelly Arndt:

Enclosed is a repossession statement which provides an accounting for the
disposition of your repossessed vehicle.

If you have any questions, please contact us at 888-860-8536.

Respectfully Yours,
State Farm Bank, FSB®
Recovery Department
888-860-8536


MEMBER
FDIC

Home Office, Bloomington, IL


EQUAL HOUSING
LENDER



Scanned with CamScanner



State Farm Bank
P.O. Box 2328
Bloomington, Illinois  61702-2328

## REPOSSESSION STATEMENT

December 17, 2018

Kelly Arndt
1102 N 48th Ave
Pensacola, FL 32506-4724

| | |
|---|---|
| Account Number: | 852-8548590781 -1 |
| Year, Make, Model: | 2017 Mazda MX-5 Miata |
| V. I. N. #: | JM1NDAM75H0105197 |
| Date Sold: | December 4, 2018 |
| Selling Price: | $23,500.00 |

---

### Account Disposition

| | | |
|---|---|---|
| Principal Balance | + | $36,312.55 |
| Accrued Interest | + | $ 357.25 |
| Late Fees due as of Repossession | + | $ 61.31 |
| **Gross Balance:** | | $36,731.11 |

Less:

| | | |
|---|---|---|
| Selling Price (above) | - | ($23,500.00) |
| **Net Balance:** | | $13,231.11 |

Plus Allowable Expenses:

| | | |
|---|---|---|
| Repossession/Remarketing Fees | + | $1,269.75 |
| Miscellaneous Fees | + | $ 0.00 |
| **Deficiency as of: December 17, 2018** | | $14,500.86 |

Daily interest accrued: $ 1.83



Home Office, Bloomington, IL



MEMBER
FDIC

Scanned with CamScanner

Filing # 97172540 E-Filed 10/11/2019 09:17:58 PM

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

I.   **CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>SEVENTEENTH</u> JUDICIAL CIRCUIT,
IN AND FOR <u>BROWARD</u> COUNTY, FLORIDA

Case No.: <u>CACE-19-021264 (09)</u>
Judge: _____

<u>Kelly Arndt, Shirley Silkiss, individually and o/b/o all others similarly situated,</u>
Plaintiff

vs.

<u>Twenty-One Eighty-Five, LLC, State Farm Bank, F.S.B.</u>
Defendant

II.   **TYPE OF CASE**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability – commercial
    ☐ Premises liability – residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure $0 - $50,000
    ☐ Commercial foreclosure $50,001 - $249,999
    ☐ Commercial foreclosure $250,000 or more
    ☐ Homestead residential foreclosure $0 – 50,000
    ☐ Homestead residential foreclosure $50,001 - $249,999
    ☐ Homestead residential foreclosure $250,000 or more
    ☐ Non-homestead residential foreclosure $0 - $50,000
    ☐ Non-homestead residential foreclosure $50,001 - $249,999

☐ Non-homestead residential foreclosure $250,00 or more
☐ Other real property actions $0 - $50,000
☐ Other real property actions $50,001 - $249,999
☐ Other real property actions $250,000 or more

☐ Professional malpractice
    ☐ Malpractice – business
    ☐ Malpractice – medical
    ☐ Malpractice – other professional
☒ Other
    ☒ Antitrust/Trade Regulation
    ☐ Business Transaction
    ☐ Circuit Civil - Not Applicable
    ☐ Constitutional challenge-statute or ordinance
    ☐ Constitutional challenge-proposed amendment
    ☐ Corporate Trusts
    ☐ Discrimination-employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

III.   **REMEDIES SOUGHT** (check all that apply):
- ☒ Monetary;
- ☒ Non-monetary declaratory or injunctive relief;
- ☒ Punitive

IV.   **NUMBER OF CAUSES OF ACTION: (   )**
(Specify)

<u>4</u>

V.   **IS THIS CASE A CLASS ACTION LAWSUIT?**
- ☒ Yes
- ☐ No

VI.   **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
- ☒ No
- ☐ Yes – If "yes" list all related cases by name, case number and court:

VII.   **IS JURY TRIAL DEMANDED IN COMPLAINT?**
- ☒ Yes
- ☐ No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature <u>s/ Robert W Murphy</u>      FL Bar No.: <u>717223</u>
    Attorney or party                                                      (Bar number, if attorney)

<u>Robert W Murphy</u>      <u>10/11/2019</u>
    (Type or print name)                                          Date