UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-62902-CIV-ALTONAGA/Strauss

**KELLY ARNDT** and
**SHIRLEY SILKISS**,

      Plaintiffs,
v.

**TWENTY-ONE EIGHTY-FIVE, LLC**;
and **STATE FARM BANK, F.S.B.**,

      Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendants, Twenty-One Eighty-Five, LLC ("Twenty-One Eighty-Five") and State Farm Bank, F.S.B.'s ("State Farm Bank['s]") Motion to Dismiss Amended Complaint for Damages and Incidental Relief [ECF No. 30]. Plaintiffs filed a Memorandum in Opposition [ECF No. 35] to the Motion, to which Defendants filed a Reply [ECF No. 38]. The Court has carefully considered the Amended Complaint for Damages and Incidental Relief [ECF No. 28], the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is granted in part.

### I. BACKGROUND

Plaintiffs bring this putative class action to challenge Defendants' motor vehicle repossession and resale practices. (*See generally* Am. Compl.). Plaintiff, Kelly Arndt, is a resident of Escambia County, Florida; Plaintiff, Shirley Silkiss is a resident of Broward County, Florida. (*See id.* ¶¶ 6–7). Defendant, State Farm Bank, a federal savings bank with its principal place of business in Illinois, provides financing to purchasers of new and used motor vehicles in Florida.

(*See id.* ¶ 8; Notice of Removal [ECF No. 1] ¶ 18).[1]  Defendant, Twenty-One Eighty-Five, a Delaware limited liability company with its principal place of business in Illinois, receives assignments of consumer loans from its parent corporation, State Farm Bank.  (*See* Am. Compl. ¶ 9; Notice of Removal ¶ 19).

On September 6, 2017, Plaintiffs executed a Promissory Note and Security Agreement (the "Finance Agreement") in favor of State Farm Bank to finance the purchase of a motor vehicle.  (*See* Am. Compl. ¶¶ 11–12; *id.*, Ex. A, Finance Agreement [ECF No. 28-1]).  Arndt financed the purchase of a 2017 Mazda MX-5 Miata (the "Collateral") for personal and household use.  (*See* Am. Compl. ¶ 14).  State Farm Bank assigned or sold the Finance Agreement to Twenty-One Eighty-Five but continued to service the Finance Agreement.  (*See id.* ¶¶ 15–16).

The Finance Agreement contains a section entitled "Promise to Pay" setting forth the terms of repayment.  (Finance Agreement 2 (bold omitted)).[2]  To secure their obligations, Plaintiffs granted State Farm Bank a security interest in the Collateral.  (*See id.* 3).  A section entitled "Remedies of Lender" delineates State Farm Bank's remedies following an event of default.  (*Id.* 5 (bold, capitalization, and underlining omitted)).  Plaintiffs and Defendants agreed federal law and Illinois law (if not preempted) would govern the Finance Agreement.  (*See id.* 6).

On October 25, 2018, State Farm Bank exercised its right to repossess the Collateral.  (*See* Am. Compl. ¶ 17).  Six days later, State Farm Bank sent Arndt a Notice of Sale advising State Farm Bank intended to dispose of the Collateral in purported compliance with the requirements of the Uniform Commercial Code (the "UCC").  (*See id.* ¶¶ 18, 20; *id.*, Ex. B, Notice of Sale [ECF

---

[1] Plaintiffs sued Defendants in Florida state court, and Defendants removed the case on November 22, 2019 under the Class Action Fairness Act ("CAFA"), 28 U.S.C. sections 1332(d), 1453. (*See* Notice of Removal 1).

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

No. 28-2]). The Notice of Sale apprised Arndt that the Collateral "ha[d] been repossessed by State Farm Bank . . . due to default . . . [under the] promissory note and security agreement, and [would] be sold by private sale or any other commercially reasonable manner[.]" (Notice of Sale 2 (alterations added)). State Farm Bank did not send Silkiss a notice of intended disposition of the Collateral. (*See* Am. Compl. ¶ 21).

Plaintiffs allege State Farm Bank's Notice of Sale violated Article 9 of the UCC, as codified in the Florida Statutes, by failing to comply with various statutory notice provisions. (*See id.* ¶ 20). Specifically, the Notice of Sale allegedly failed to comply with Article 9 of the UCC in that it: (1) failed to identify the method in which State Farm Bank intended to dispose of the Collateral, in violation of section 679.613(1)(c), Florida Statutes; (2) failed to disclose details of the public sale, in violation of section 679.613(1)(e), Florida Statutes; (3) failed to advise Arndt of her right to redeem the Collateral, in violation of section 679.623, Florida Statutes; and (4) failed to disclose Arndt was entitled to an accounting of her unpaid indebtedness and the charge, if any, for such accounting, in violation of sections 679.614(1)(a) and 679.613(1)(d), Florida Statutes. (*See id.* (A)–(D); *see also id.* ¶¶ 22–24).

Following the sale of the Collateral, State Farm Bank sent Arndt a Deficiency Collection Notice ("Repossession Statement") in purported compliance with section 679.616, Florida Statutes. (*See id.* ¶¶ 27–28; *id.*, Ex. C., Repossession Statement [ECF No. 28-3]). The Repossession Statement sought to collect a deficiency balance from Arndt. (*See* Am. Compl. ¶¶ 25–26; *see generally* Repossession Statement). Defendants allegedly have collected or attempted to collect deficiency balances from consumers who were sent defective post-repossession notices and have improperly reported deficiencies to consumer reporting agencies in violation of Florida law. (*See* Am. Compl. ¶¶ 25–26, 30).

Plaintiffs seek (1) certification of the case as a class action; (2) actual and statutory damages; and (3) declaratory, injunctive, and other equitable relief. (*See id.* ¶¶ 3–4). Plaintiffs further request an award of attorney's fees under Florida's reciprocal fee statute because the Finance Agreement "provides for the recovery of attorney's fees and costs in the event the holder of the finance agreement is required to take any action to enforce the terms thereof." (*Id.* ¶ 32; *see also id.* ¶ 34). Plaintiffs state "when a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party (whether as plaintiff or defendant) when that party prevails in any action." (*Id.* ¶ 34 (citing Fla. Stat. § 57.105(7))).[3]

On January 6, 2020, Plaintiffs filed their Amended Complaint asserting five claims: Action for Violation of Article 9, UCC against Twenty-One Eighty-Five (Count I) (*see id.* ¶¶ 57–63); Action for Declaratory Relief against both Defendants (Count II) (*see id.* ¶¶ 64–67); Action for Violation of Florida Consumer Collection Practices Act ("FCCPA"), section 559.551 *et seq.*, Florida Statutes, against both Defendants (Count III) (*see id.* ¶¶ 68–76); Action for Common Law Equitable Relief against both Defendants (Count IV) (*see id.* ¶¶ 77–81); and Action for Equitable Relief under UCC against Twenty-One Eighty-Five (Count V) (*see id.* ¶¶ 82–87). Defendants move to dismiss all counts for failure to state claims for relief under Federal Rule of Civil Procedure 12(b)(6). (*See generally* Mot.).

## II. LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

---

[3] Section 57.105(7), Florida Statutes, provides "[i]f a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract." *Id.* (alteration added).

4

*v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (alteration added) (quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation omitted).  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

### III.  DISCUSSION

As stated, Defendants seek dismissal of all claims for relief.  (*See generally* Mot.).  Prior to addressing whether the Amended Complaint states valid causes of action, the Court must determine what law applies to Plaintiffs' claims.  Defendants contend Illinois law applies (*see id.* 8–11); while Plaintiffs assert Florida law governs (*see* Opp'n 6–11).

"[A] federal district court sitting in diversity must apply the choice of law rules of the forum state." *Clanton v. Inter.Net Glob., L.L.C.*, 435 F.3d 1319, 1323 (11th Cir. 2006) (alteration added; internal quotation marks and citation omitted). Because the Court is exercising diversity jurisdiction over the suit — and since the Court is in Florida — the Court applies Florida's choice-of-law rules.

Under Florida's choice-of-law rules, it is well-settled that "Florida courts are obligated to enforce choice-of-law provisions unless a showing is made that the law of the chosen forum contravenes strong public policy or that the clause is otherwise unreasonable or unjust." *Great Am. Fid. Ins. Co. v. JWR Constr. Servs., Inc.*, 882 F. Supp. 2d 1340, 1350 (S.D. Fla. 2012) (internal quotation marks and citation omitted)); *see Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 314 (Fla. 2000) (same). Section 671.105(1), Florida Statutes, "expressly anticipates that parties may enter into choice-of-law provisions: 'When a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties.'"[4] *Jet Pay, LLC v. RJD Stores, LLC*, No. 11-60722-Civ, 2011 WL 2708650, at *5 (S.D. Fla. July 12, 2011) (alteration adopted; quoting Fla. Stat. § 671.105(1); other citation omitted). Further, "[a] choice of law provision in a contract is presumed valid until it is proved invalid. The party who seeks to prove such a provision invalid because it violates public policy bears the burden of proof."

---

[4] Plaintiffs do not dispute the Finance Agreement "bears a reasonable relationship to . . . [Illinois]." Fla. Stat. § 671.105(1) (alterations added); (*see* Opp'n 6–11; *see also* Finance Agreement 5 ("This Note is entered into in Illinois . . . ." (alteration added)); *id.* ("[A]ll proceeds will be disbursed by [State Farm Bank] at its principal office in Illinois." (alterations added)); *id.* ("[State Farm Bank] will process [Plaintiffs'] application and make all lending decisions at or through its offices in Illinois." (alterations added))). Nor do Plaintiffs contend the choice-of-law provision is subject to the exceptions delineated in section 671.105(2), Florida Statutes. (*See* Opp'n 6–11; *see also* Mot. 9).

*Mazzoni Farms, Inc.*, 761 So. 2d at 311 (alteration added; internal quotation marks and citation omitted).

The Finance Agreement contains the following choice-of-law provision: "This Note[5] is governed by federal law and, to the extent not preempted thereby, by the law of the State of Illinois." (Finance Agreement 6 (alteration added)). Defendants contend the "parties unambiguously chose federal law and, to the extent not preempted thereby, Illinois law — not Florida law — to govern Plaintiffs' claims[.]" (Mot. 10 (alteration added)). According to the Defendants, Plaintiffs' Florida state-law claims must be dismissed as Illinois law applies. (*See id.* 10–11; Reply 4–5). The Court agrees, addressing each claim in turn.

Plaintiffs bring two claims for relief under the UCC, as codified in the Florida Statutes, against Defendant, Twenty-One Eighty-Five. (*See* Am. Compl. ¶¶ 57–63; 82–87). Plaintiffs' UCC allegations against Twenty-One Eighty-Five directly relate[6] to Defendants' obligations, duties, and performance under the Finance Agreement. Plaintiffs allege[7]: (1) Plaintiffs and State Farm Bank entered into a Finance Agreement (*see id.* ¶¶ 11–12); (2) State Farm Bank exercised

---

[5] The term "Note" means the "Promissory Note and Security Agreement." (Finance Agreement 2).

[6] The Eleventh Circuit has made clear "a choice-of-law provision that by its terms governs only the parties' contractual relationship may not provide the choice-of-law for non-contract claims." *Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 721 F. App'x 865, 875 n.11 (11th Cir. 2018) (citing *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292 (11th Cir. 2003)). "If the choice-of-law provision of the agreement is narrow, it only governs claims *relating to the contract*." *Id.* (emphasis added; citing *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151 (11th Cir. 2009)); *see also IOTC Air, LLC v. Bombardier Inc.*, No. 11-22861-Civ, 2012 WL 13013072, at *4 (S.D. Fla. Mar. 23, 2012) (noting choice-of-law provisions that govern only the parties' contractual relationship apply "to the interpretation of the respective agreements and the *contractual claims relating to them*" (emphasis added)); *Harper v. O'Charley's, LLC*, Civ. Act. No. 16-0577, 2017 WL 5598815, at *3 n.6 (S.D. Ala. Nov. 20, 2017) ("Nowhere in [*Cooper* or *Green Leaf* ] . . . . does the Eleventh Circuit deem a choice of law provision relating only to the agreement as failing to reach contract-based claims arising from that agreement." (alterations added)).

[7] The Court cites to Plaintiffs' general allegations, as they actuate Plaintiffs' UCC claims in Counts I and V. (*See* Am. Compl. ¶ 58 (reincorporating and realleging all general allegations); *id.* ¶ 83 (same)). Moreover, Plaintiffs' non-UCC claims (Counts II–IV) are based on the same operative facts as the UCC claims, and each count reincorporates all general allegations. (*See id.* ¶¶ 65, 69, 78).

its contractual right to repossess the Collateral due to Arndt's default on the Finance Agreement (*see id.* ¶ 17; Notice of Sale 2); (3) State Farm Bank exercised its contractual right to sell the Collateral (*see* Am. Compl. ¶ 18; Finance Agreement 5); (4) State Farm Bank's Notice of Sale — issued because of Arndt's default on the Finance Agreement — failed to comply with Article 9 of the UCC (*see* Am. Compl. ¶ 20; Notice of Sale 2); and (5) Defendants improperly collected or attempted to collect deficiency balances and wrongfully reported the deficiencies to consumer reporting agencies (*see* Am. Compl. ¶¶ 28–30; Repossession Statement). The Finance Agreement (attached to the Amended Complaint) delineates Defendants' remedies "[u]pon the occurrence of any event of default," which include: "all . . . rights and remedies of a secured party as provided by Article 9 of the [UCC]"; the rights to "repossess[]" and "s[ell]" the Collateral upon notice to borrower; and the right to hold borrower "liable for any and all unpaid amounts remaining or any other deficiency[.]" (Finance Agreement 5 (alterations added)).

The UCC allegations clearly relate to the Finance Agreement and its provision addressing Defendants' contractual rights to repossess and sell the Collateral, and Plaintiffs' deficiency-liability. Plaintiffs even admit their UCC claims seek to *enforce the Finance Agreement*. (*See* Am. Compl. ¶¶ 31–34, 58, 83; *id.* 14 (seeking an award of attorney's fees for filing and prosecuting this contract action)). As such, Florida's choice-of-law rules dictate Illinois law governs Plaintiffs' UCC claims against Twenty-One Eighty-Five. *See Citi-Lease Co. v. Entm't Family Style, Inc.*, 825 F.2d 1497, 1499, 1501 (11th Cir. 1987) (applying New Jersey's UCC notice of sale provision — not Florida's — because the contract specifically provided that its terms were to be construed and enforced according to New Jersey law); *see also Sack v. Cessna Aircraft Co.*, 676 F. App'x 887, 888, 891 (11th Cir. 2017) (applying Kansas's version of the UCC — not Florida's — to related UCC claims in a diversity case, where the parties contractually agreed Kansas law would

govern); *Durham Commercial Capital Corp. v. Select Portfolio Servicing, Inc.*, No. 3:14-cv-877, 2016 WL 6071633, at *8 n.7 (M.D. Fla. Oct. 17, 2016) (applying New York law to all issues relating to the UCC in diversity action, where the parties' agreement was reasonably related to New York and specified New York law governed). Consequently, Counts I and V must be dismissed.

In Count II, Plaintiffs assert a declaratory relief claim against Defendants. (*See* Am. Compl. ¶¶ 64–67). Plaintiffs seek a declaration "as to [Plaintiffs'] respective rights, remedies, and obligations of the parties" relating to Defendants' right to repossess collateral and collect deficiency balances under the Finance Agreement. (*Id.* ¶ 67 (alteration added); *see also id.* ¶¶ 65–66). Plaintiffs further request an award of attorney's fees for their efforts at enforcing the Finance Agreement. (*See id.* 15). Clearly, the declaratory-relief claim relates to the Finance Agreement, and thus, the Court will enforce the choice-of-law provision as to this claim. *See Amegy Bank Nat'l Ass'n v. DB Private Wealth Mortg., Ltd.*, No. 2:12-cv-243, 2014 WL 791503, at *5 (M.D. Fla. Feb. 24, 2014) (finding the plaintiff's declaratory judgment claim involving a security agreement was governed by Texas law because "[t]he plain language of the security agreement [] broadly provide[d] it 'shall be governed by and construed in accordance with the laws of the State of Texas.'" (alterations added)). Because Plaintiffs' declaratory relief claim is governed by Illinois law, and Plaintiffs' claim relies on Florida law, Count II is dismissed.

In Count III, Plaintiffs bring a claim against Defendants for violation of the FCCPA. (*See* Am. Compl. ¶¶ 68–76). Plaintiffs allege "Defendants violated the FCCPA in that it [sic] has claimed, attempted or threatened to enforce a debt when it [sic] knew that the debt was not legitimate or asserted the existence of some other legal right when it [sic] knew that the right did not exist . . . to-wit: the right to collect a deficiency in an amount and in a manner not authorized

9

by the UCC." (*Id.* ¶ 73 (alteration added); *see also id.* ¶¶ 69–72, 74–77). Plaintiffs' allegations directly relate to Defendants' obligations, duties, and performance under the Finance Agreement. As such, the Finance Agreement's choice-of-law provision precludes Plaintiffs' state-law claim under the FCCPA. Indeed, numerous courts in this District have "repeatedly determined that a contract's choice of law provision requires dismissal of claims under another state's law which relate to the contract." *Burger King Corp. v. Lee*, No. 06-20645-Civ, 2006 WL 8433548, at *3 (S.D. Fla. Aug. 11, 2006) (collecting cases); *see also Beckel v. Fagron Holding USA, LLC*, No. 8:16-cv-2059, 2017 WL 3730395, at *9 (M.D. Fla. June 30, 2017) ("An enforceable choice of law clause providing that Delaware's substantive law applies bars claims brought under Florida's (or any other state's) statutory law." (citations omitted)); *Martin v. Creative Mgmt. Grp., Inc.*, No. 10-cv-23159, 2013 WL 12061809, at *9 (S.D. Fla. July 26, 2013) ("Where the parties agreed to a choice-of-law provision in their contract, claims brought under the statutes of other states are generally inapplicable." (citations omitted)). In short, Count III is dismissed.

In Count IV, Plaintiffs bring a claim for "Common Law Equitable Relief" against Defendants. (*See* Am. Compl. ¶¶ 77–81 (bold, capitalization, and underlining omitted)). Plaintiffs' scant allegations refer to Defendants' contractual rights to repossess the Collateral and collect deficiency balances under the Finance Agreement. Plaintiffs again admit their equitable-relief claim seeks to enforce the Finance Agreement. (*See id.* ¶ 78 (reincorporating paragraphs 31–34)). As such, the Finance Agreement choice-of-law provision governs, and Plaintiffs' equitable relief claim under Florida law is dismissed.

Plaintiffs make a myriad of arguments in support of their contention Florida law applies, but the Court remains unpersuaded. (*See* Opp'n 6–11). The Court explains why.

Plaintiffs first argue they "did not sue on [the Finance Agreement]" and thus the "narrow choice of law clause" does not apply to Plaintiffs' claims. (*Id.* 6–7 (alteration added)). The Court disagrees. Plaintiffs' explanation that they "did not sue on [the Finance Agreement]" directly contradicts the Amended Complaint's allegations. (*Id.* 6 (alteration added)). Specifically, Plaintiffs seek an award of attorney's fees for their efforts in this action at *enforcing the Finance Agreement*. (*See* Am. Compl. ¶¶ 31–34[8] (citing Fla. Stat. § 57.105(7))); *see also Fla. Hurricane Prot. and Awning, Inc. v. Pastina*, 43 So. 3d 893, 895 (Fla. 4th DCA 2010) (en banc) ("[T]he purpose behind section 57.105(7) is to provide mutuality of attorney's fees as a remedy *in contract cases*. The statute is designed to even the playing field[.]" (second alteration and emphasis added; internal quotation marks and citations omitted)). Plaintiffs did sue on the Finance Agreement, as made clear by their allegations.

Plaintiffs contend because the Finance Agreement does not include broader language, such as "any dispute or claim between the parties," the choice-of-law provision does not apply. (Opp'n 7 (emphasis omitted)). Not so. On this point, *Harper*, 2017 WL 5598815, is instructive.

In *Harper*, the third-party defendant claimed the choice-of-law provision did not reach the third-party plaintiff's contractual-indemnity claim because the provision did not "specify [] Mississippi law governs any <u>claims</u> arising out of that agreement, but instead sa[id] only [] Mississippi law governs the agreement itself." *Id.* at *3 (alterations added; underlining in original). The court rejected the third-party defendant's distinction. *See id.* The court stated "[a]s a matter of logic and common sense," the third-party plaintiff's *contractual*-indemnity claim "fall[s]

---

[8] Plaintiffs seek an award for attorney's fees under section 57.105(7) in all counts. (*See* Am. Compl. ¶¶ 31–34, 58, 65, 69, 78, 83)*; see also Dorvil v. Nationstar Mortg. LLC*, No. 17-23193-Civ, 2019 WL 1992932, at *20 (S.D. Fla. Mar. 26, 2019) ("[I]f one party is allowed to recover attorneys' fees in enforcing the contract, then the other party to the contract may also be allowed to recover attorneys' fees when that party *seeks to enforce the contract* and ultimately prevails." (alteration and emphasis added)).

11

squarely within the parameters of the choice of law provision . . . ." *Id.* (alterations added). So too here. "As a matter of logic and common sense," Plaintiffs' UCC contract-claims[9] (and other related contract claims) "fall squarely within the parameters of the choice of law provision" in the Finance Agreement.[10] *Id.*; *see also id.* n.6 (noting the third-party defendant "fail[ed] to identify a single case in which any court has declared that a choice of law provision stating that a contract will be governed by the law of a particular state is inapplicable to contract-based claims under that agreement unless the choice of law clause employs talismanic language about 'claims arising out of the agreement'"; and citing case law to the contrary (alteration added)).

---

[9] Plaintiffs cite no authority for the proposition Article 9, UCC claims *are not* contract-based. *See* U.C.C. § 9-109(a)(1) ("[T]his article applies to . . . a transaction, regardless of its form, that creates a security interest in personal property or fixtures *by contract*." (alterations and emphasis added)). Instead, Plaintiffs contend "Courts" — although citing only one — have "refused to expand the scope of a contractual choice-of-law clause to claims based on post-repossession conduct." (Opp'n 8).

*In re Littleton*, 220 B.R. 710 (Bankr. M.D. Ga. 1998), on which Plaintiffs rely, is off point. The *In re Littleton* court did not apply (nor even address) Florida's choice-of-law rules which the Court must apply. Further, the *In re Littleton* court reached its decision by relying entirely on a Georgia state court decision, *Lewis v. First Nat'l Bank of Miami*, 216 S.E. 2d 347 (1975), which held (in a brief decision) that Georgia law applied with respect to repossession and resale because the parties, unlike those here, did not agree to be bound by the law of another state. *See Lewis*, 216 S.E. 2d at 348. Plaintiffs' invocation of *In re Littleton* fails to persuade. *See Citi-Lease Co.*, 825 F.2d at 1499, 1501 (applying New Jersey's UCC provision — not Florida's — to post-repossession conduct where the parties' contract specifically provided that its terms were to be construed and enforced according to New Jersey law).

[10] Plaintiffs claim "Courts across the country routinely respect narrow choice-of-law clauses, refusing to rewrite the clause so as to extend to claims beyond the note to other claims." (Opp'n 7). Plaintiffs then provide strings of citations without any explanation or analysis whatsoever of how the citations apply to Plaintiffs' UCC (or other related contract) claims. (*See id.*). Tellingly, Plaintiffs' cited authorities involve non-contract claims, not contract-based claims. *See Yovel-Bash v. Wellesley Asset Secured Portfolio, Inc.*, No. 12-cv-5280, 2013 WL 4781539, at *13–14 (E.D.N.Y. Sept. 5, 2013) (choice-of-law provision governed contract-based claims but not *tort* claims); *Pall Mall Corp. Hosp., Inc. v. Gage Travel, Inc.*, No. 00 Civ. 0851, 2000 WL 1745046, at *7 n.7 (S.D.N.Y. Nov. 28, 2000) (choice-of-law provision did not extend to claims *beyond the contract*); *Popeyes, Inc. v. YCALWB, Inc.*, No. Civ. A. 87-4041, 1988 WL 125458, at *2 (E.D. La. Nov. 21, 1988) (choice-of-law clause did not extend to *misrepresentation claims*); *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 766–70 (Del. Ch. 2014) (choice-of-law clause did not extend to *fraud claims*).

Plaintiffs next urge the Court to resolve the choice-of-law question according to the "most significant relationship" test outlined in the Restatement (Second) of Conflict of Laws.[11] (Opp'n 8). The Court declines to do so for two reasons. First, the Court must apply Florida's choice-of-law rules and "under Florida law, courts *will enforce* choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1341 (11th Cir. 2005) (emphasis added; internal quotation marks and citations omitted).

Second, where, as here, the parties have contractually agreed to the applicable law for a contract dispute, Florida courts *will not* employ a "most significant relationship test" to resolve choice-of-law issues related to contract claims. *See Nix v. ESPN, Inc.*, 772 F. App'x 807, 809 (11th Cir. 2019) ("When faced with a conflict of laws in a *torts case*, Florida courts apply the 'most significant relationship' test . . . ." (alteration and emphasis added)); *Perez v. Fedex Ground Package Sys., Inc.*, No. 13-62577-Civ, 2014 WL 12279428, at *3 n.2 (S.D. Fla. Mar. 19, 2014) (noting Florida courts may employ a most significant relationship test to resolve choice-of-law issues when the parties *have not* contractually agreed to the applicable law for a dispute); *Electrostim Med. Servs., Inc. v. Lindsey*, No. 8:11-cv-2467, 2012 WL 1405707, at *5 (M.D. Fla. Mar. 13, 2012), *report and recommendation adopted*, 2012 WL 1405681 (M.D. Fla. Apr. 23, 2012) ("Florida does not follow the Restatement's 'substantial relationships test' on issues related to choice of law in a breach of contract claim." (citation omitted)).

Plaintiffs further insist applying Illinois law will contravene Florida's public policy. (*See* Opp'n 9–11). "A choice-of-law provision is presumptively valid and it is the burden of the party

---

[11] Plaintiffs insist the Court's choice-of-law analysis is governed by Restatement (Second) of Conflict of Laws section 254. (*See* Opp'n 8). Plaintiffs do not cite — nor has research uncovered — any authority supporting the proposition Florida resolves conflict-of-laws questions according to Restatement (Second) of Conflict of Laws section 254 where, as here, the parties have contractually agreed to the applicable law for a contract dispute. The Court will not be the first to do so.

13

opposing the choice-of-law provision to demonstrate why it should not be enforced." *Maurice's Jewelers II, Inc. v. Pandora Jewelry, LLC*, No. 16-25079-Civ, 2017 WL 3822056, at *5 (S.D. Fla. Aug. 30, 2017) (citation omitted). "It is well settled that absent a public policy prohibition, Florida courts will enforce a choice-of-law provision in a contract unless the law of the chosen forum contravenes strong public policy." *Perez v. Fedex Ground Package Sys., Inc.*, 587 F. App'x 603, 606 (11th Cir. 2014) (internal quotation marks and citations omitted). "The countervailing public policy must be of sufficient importance and rise above the level of routine policy considerations to warrant invalidation of a party's choice to be bound by the substantive law of another state." *Se. Floating Docks, Inc. v. Auto-Owners Ins. Co.*, 82 So. 3d 73, 80 (Fla. 2012) (citation omitted).

Plaintiffs contend the UCC "forbids the prospective waiver of the right to notification of disposition of collateral" and "prohibits waiver of the remedies available under the UCC[.]" (Opp'n 9 (alteration added; internal quotation marks omitted)). According to Plaintiffs, "[t]hese nonwaiver provisions reflect Florida's strong and expressed public policy in favor of the UCC rights sued upon." (*Id.* (alteration added)). Plaintiffs' argument misses the mark. The Finance Agreement does not prevent Plaintiffs from vindicating their "UCC rights sued upon." Defendants provide an apt observation: "[T]he choice-of-law provision, by requiring the application of the Illinois UCC, is plainly not a waiver of the notice requirements because the Illinois UCC *contains the same requirements*." (Reply 6 (alteration and emphasis added)); *compare* Fla. Stat. §§ 679.611, 679.613, & 679.614, *with* 810 Ill. Comp. Stat. 5/9-611, 5/9-613, & 5/9-614. Contrary to Plaintiffs' insistence, the Finance Agreement does not prohibit Plaintiffs from pursuing their UCC claims in court.

Plaintiffs next argue that "[t]he application of Illinois law [] virtually extinguish[es] [] unwaivable Florida rights and remedies because the Illinois UCC does not permit the recovery of

14

statutory damages on a classwide basis." (Opp'n 10). Stated differently, Plaintiffs assert the choice-of-law provision violates Florida public policy simply because a different result may be reached by applying Illinois law. (*See id.*). The Court will not invalidate the choice-of-law provision on this ground.

As stated, section 671.105(1), Florida Statutes "expressly anticipates that parties may enter into choice-of-law provisions[,]" *Jet Pay, LLC*, 2011 WL 2708650, at *5 (alteration added); and here, the Parties (not anyone else) chose Illinois law to govern contract-based claims related to the Finance Agreement (*see* Finance Agreement 6). The Court cannot "discern any 'strong public policy' reason why the general presumption in favor of choice-of-law provisions should not be followed." *Jet Pay, LLC*, 2011 WL 2708650, at *5; *see also Kuber v. Prudential Ins. Co. of Am.*, No. 19-80151-Civ, 2019 WL 7899139, at *4 (S.D. Fla. May 31, 2019) ("The mere fact that Florida law would effect a different result does not render a choice-of-law clause invalid; rather, the law of the alternative forum must conflict with a Florida policy interest of 'paramount' importance." (internal quotation marks and citations omitted)); *cf. Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1297 (11th Cir. 1998) ("We will not invalidate choice clauses, however, simply because the remedies available in the contractually chosen forum are less favorable than those available in the courts of the United States.")

Plaintiffs have not shown "that some great prejudice to the dominant public interest requires [the Court] to invalidate the [choice-of-law] provision." *Russo v. Fifth Third Bank*, 634 F. App'x 774, 777 (11th Cir. 2015) (alterations added; internal quotation marks and citation omitted). "Simply put, when an unambiguous, valid choice-of-law provision exists, as it does here, there is no need for the court to engage in a further conflict of laws analysis." *Sokolow v.*

*Damico*, No. 19-cv-80278, 2019 WL 7188563, at *6 (S.D. Fla. Dec. 26, 2019) (citations omitted). Illinois law governs Plaintiffs' claims in the Amended Complaint.[12]

Plaintiffs request leave to amend in the event the Court finds any deficiencies in the Amended Complaint. (*See* Opp'n 16). In doing so, however, Plaintiffs concede "if Illinois law were [] to apply, there would be no class remedy whatsoever for Defendants' critical notice violations." (*Id.* 10 (alteration added)). Given Plaintiffs' concession, and the Court's conclusion Illinois law applies, Plaintiffs' claims lack the expectation that a class may be eventually certified. *See Wright Transportation, Inc. v. Pilot Corp.*, 841 F.3d 1266, 1271 (11th Cir. 2016) ("Class-action claims filed in or removed to federal court under CAFA can be dismissed for lack of jurisdiction if those claims contain frivolous attempts to invoke CAFA jurisdiction or lack the expectation that a class may be eventually certified."). No independent basis for jurisdiction exists for Plaintiffs' claims against Defendants. Accordingly, the Court denies Plaintiffs' request for leave to amend and dismisses the case.

## IV.   CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants, Twenty-One Eighty-Five, and State Farm Bank, F.S.B.'s Motion to Dismiss Amended Complaint for Damages and Incidental Relief **[ECF No. 30]** is **GRANTED in part**. Counts I, II, III, IV, and V are **DISMISSED without prejudice**. The Clerk of Court is directed to **CLOSE** this case. Any pending motions are **DENIED as moot**.

---

[12] Because Illinois law controls Plaintiffs' claims, the Court need not address whether Plaintiffs state viable causes of action under Florida law. (*See* Mot. 11–20).

CASE NO. 19-62902-CIV-ALTONAGA/Strauss

**DONE AND ORDERED** in Miami, Florida, this 26th day of March, 2020.

                                                                  _____
                                                                  **CECILIA M. ALTONAGA**
                                                                  **UNITED STATES DISTRICT JUDGE**

cc: counsel of record